[Crim. No. 777. In Bank.—February 18, 1904.]

## THE PEOPLE, Respondent, v. FRANCISCO OCHOA, Appellant.

CRIMINAL LAW—MURDER OF WOMAN—BIAS OF JUROR NOT ESTABLISHED. —A challenge to a juror for actual bias was properly held not sustained, merely because the juror would require less evidence to form a clear and decided opinion as to the guilt of the defendant where the proof is that he killed a woman than it would where the proof is that he killed a man, where the juror further stated that he could consider the fact that the deceased was a woman in connection with all other facts proven in making up his verdict.

ID.—IMPRESSION OF GUILT—STATEMENT OF JUROR—CHALLENGE NOT SUSTAINED.—A statement by a juror that he had an impression on his mind that the defendant was guilty, and that until he heard evidence to remove it that impression would remain, but that he had no prejudice against the defendant, and no opinion that he was guilty, and his impression would not prevent him from trying the case fairly, and that he could lay it aside, and that to find a verdict against the defendant he would require full proof by the prosecution of all the facts showing guilt, does not establish as matter of law that the juror was biased, and the evidence sufficiently sustains the ruling of the court against a challenge to the juror for actual bias.

ID.—IMMATERIAL EXCLUSION OF EVIDENCE.—The exclusion of evidence of the defendant which did not operate to his injury, and had no bearing upon the material question in the case, is not material; and it is immaterial whether an objection to a question was correctly sustained or not, where the ruling was disregarded and the evidence fully given by the defendant.

ID.—INSTRUCTION—EFFECT OF DRUNKENNESS—DEGREE OF MURDER.—The failure to give part of a requested instruction as to the effect of drunkenness of the defendant upon the degree of murder, where the charge as given sufficiently stated the law upon that subject, was not error.

APPEAL from a judgment of the Superior Court of Kern County and from an order denying a new trial. W. M. Conley, Judge presiding.

The facts are stated in the opinion of the court.

E. J. Emmons, Alvin Fay, and Henry C. Dibble, for Appellant.

Tirey L. Ford, Attorney-General, and A. A. Moore, Jr., Deputy Attorney-General, for Respondent.

BEATTY, C. J.—The defendant was convicted of murder in the first degree and the death penalty imposed. He appeals from the judgment and from an order denying his motion for a new trial.

The facts of the case are few and simple. The defendant had been living for several years with a woman sometimes called Maria and sometimes Escolastica Barera. They were not married, but he testified that by their friends and relatives they were regarded as man and wife. For some reason she left him and went to live at the house of a woman named Lou Ross, in the town of Bakersfield. He says he tried to persuade her to leave the house of Lou Ross, which he regarded as a place of ill-repute, and return to him, but she refused to do so. Afterwards, when he was drinking in a saloon with one of his friends, Lou Ross accosted him; told him that he was a cuckold; that Escolastica was sleeping with a man named Tadeo Olivera, and taunted him with being so little of a man as to submit to the wrong. After this he continued drinking, he says, and does not remember what ensued. What did happen, as shown by the evidence for the people, was that some hours later he broke into the house of Lou Ross, where the two women were sleeping, asked where Maria (Escolastica) Barera was, and when he discovered her cowering under the bed covering, sprang upon her with the words, "Here you are, you bitch," and shot her. No question is made as to defendant's

guilt of the crime of murder, but it is claimed in his behalf that there was a question as to the degree of the crime, and that the court erred in its instructions bearing upon this point, and also in its rulings upon objections to testimony and challenges to jurors.

The evidence upon which counsel contend that the jury, if properly instructed, might have found a verdict of murder in the second degree was that of the defendant, that some years prior to the homicide he had suffered a sunstroke, from the effects of which he had never recovered, and that at the time of the homicide he was deeply intoxicated. As to the intoxication, he was corroborated by other witnesses, but not very decisively. The contention of counsel is, that his intoxication operating upon a brain permanently injured by sunstroke may well have deprived him of the capacity to form the deliberate purpose to kill essential to the crime of murder in the first degree, and therefore that any error of the court in overruling a challenge to a juror for bias, or in excluding testimony as to the relations between him and deceased prior to the killing, or in instructing the jury as to the purpose for which the evidence of intoxication was admitted, became highly material.

Upon this general statement of the case we proceed to consider the several exceptions to the rulings of the trial court which have been urged in support of the appeal.

1. It is contended that the court erred in denying the challenges for actual bias to the jurors Pierce and Howard. The direct evidence of Pierce, given upon his *voir dire,* and upon which defendant's challenge was based, reads as follows: "I reside three miles west of Bakersfield. Resided there during the month of May, 1899. I was in town frequently. I take the daily papers. I have lived in that home about eleven years. I have an extended acquaintance here in the town. I remember hearing about this alleged offense at the time it happened. The papers at that time had pretty extensive accounts as to what they represented as being the truth. I read them at the time. I do not remember of ever talking with anybody about the case. I do not remember of any one talking in my presence about it. I do not remember at the present time what the accounts were. I did not form

any opinion as to the guilt or innocence of the defendant. I have not any opinion now. I have no prejudice in my mind, because of the fact that one man has killed another.—Q. Now carrying that still further, Mr. Pierce, is there any prejudice in your mind by reason of the fact that the party deceased was a woman? Does that raise any prejudice in your mind or bias?—A. Well, I don't hardly know how to answer that. It always seems a little hard to kill a woman, naturally.— Q. Then if it was proven here by the testimony, that the defendant here did kill a woman, that very fact of itself, without any further evidence, would create a prejudice and bias as against the defendant, in your mind, would it not?— A. Well, of course, just the way I stand now it would naturally, I suppose.—Q. And it would take less evidence in that case, Mr. Pierce, to prove malice in this crime that is charged, than it would in the case where the party killed was a man, would it not?—A. I believe it would.—Q. Then, if the testimony and the information in this case should show and does show that the defendant is charged with having killed a woman, that fact of itself, if the killing is proved, raises a bias and prejudice as against the defendant, in your mind? —A. I think it would to that extent.—Q. Then it would require less evidence, in other words, for you to form a clear and decided opinion, as to the guilt of the defendant, where the proof is that he killed a woman, than it would where the proof was that he killed a man?—A. I think so. I think it would take a little stronger evidence.''

Upon this evidence alone the court would have been fully justified in denying the challenge. The juror showed himself to be entirely unbiased, but admitted that as he then stood,— i. e. without any opinion as to the guilt or innocence of the defendant, and without evidence upon which to base an opinion,—the fact that he had killed a woman, if that fact was proved, would help to convince him that the killing was malicious. There was here no suggestion of an accidental killing, and the whole effect of the juror's testimony was, that in case of an intentional killing the fact that a woman is the victim is in itself something added to the ordinary presumption of malice. We suppose that this opinion is shared by every reasonable man, and it is founded upon facts of universal cognizance. Women are weaker than men, less capable

of inflicting injury, and the necessity of using force against them is less. What a woman can do will not ordinarily amount to that provocation which is in law sufficient to reduce a homicide to manslaughter or justify a resort to the extreme measure of taking life in self-defense. For these, and for other reasons, the killing of a woman by a man is in the absence of evidence as to the particulars of the affair, more likely to be without justification, excuse, or mitigation than the killing of a man. Her weakness in comparison to his strength is an item of evidence having a material bearing upon the question of guilt.

But the challenge to the juror was not submitted upon the above-quoted evidence alone. He was further examined by the district attorney, and while he admitted that he would consider the fact that the deceased was a woman, he would consider that fact in connection with all other facts proven in making up his verdict. Upon the whole evidence the court was justified, irrespective of what has been said, in holding the juror free of bias.

The juror Howard had not discussed the case or heard it discussed, and he had not read the newspaper accounts of the killing, but he had read about the arrest of the defendant. On his *voir dire* he thus described his state of mind: "I don't think I formed any opinion as to the guilt or innocence of the defendant from what I read at that time. I don't know that I have now any impression or opinion as to his guilt or innocence. I would n't without hearing the evidence. If I should be excused for some reason and should be met on the street and asked the question, 'What do you think about that defendant? Do you think him guilty or not?' I don't think that I would say that I thought he was innocent. Until he was proven innocent I have an impression on my mind that I think he is guilty.—Q. And if you went in the box, then, you would go in with the impression at the present time that he was guilty?—A. No, I should require evidence to prove it. I could n't say that he was guilty.—Q. You say that you have an impression that he [is] guilty at the present time?—A. I have, without hearing any evidence.—Q. And if you should go in the jury-box with that state of mind at the present time you would believe him guilty?—A. Yes, sir.—Q. And it would be necessary for the defendant to furnish some evidence to

remove that opinion before your mind would be entirely un-
biased, would it not?—A. Yes, sir.—Q. Would that impres-
sion that you have at the present time, if you were in the
position of the defendant, would you be willing to be tried
by twelve men who felt towards you and your case the same
as you now feel toward the defendant and his case?—A. Yes,
sir.—Q. You would go into the box, then, with the idea that
you could lay aside the impression that you have?—A. Yes,
sir.—Q. Will you tell me how it is possible for you to lay
aside that impression of his guilt, if you are going to require
evidence to remove that, in order to get your mind in an un-
biased condition?—A. If the evidence proved that he was
innocent I would find him innocent.—Q. You would require
him to prove that though?—A. Certainly, I would.'' Upon
this evidence the defendant challenged. The people denied
the challenge and the juror was further examined as follows:
''Q. Mr. Howard, suppose you were selected as a juror in this
case and the prosecution would show that a woman was killed
and the testimony of some witness would be to the effect
that this defendant here killed her, without showing any other
circumstance whatever which led up to it, or any of the cir-
cumstances at all, just the mere fact of killing would be
sufficient in your mind to find the defendant guilty of mur-
der?—A. No, sir. I would require the prosecution to go
further and to prove all the facts in the case.—Q. Now the
impression that you have in your mind, or opinion—and you
got that from reading the papers, I believe?—A. No, I don't
think I read the papers at all. It was about the hunting of
him and the catching. I did not talk with any of the wit-
nesses.—Q. This was common street talk that you heard then,
was it?—A. I didn't pay much attention.—Q. Even with the
impression that you had in your mind that wouldn't be
sufficient to produce conviction in your mind, would it?—A.
No, sir.—Q. And if the prosecution only went that far and
showed only those two things, in that case what would your
verdict be?—A. Not guilty. I would be willing to be tried
by twelve men in the same frame of mind toward me and my
case, if I was being tried, as I am toward the defendant in
this case. I will disregard the opinion that I have and render
a fair and impartial verdict upon the evidence produced upon
CXLII. Cal.—18

the trial and the instructions given me by the court. I will require the testimony to convict to come from the plaintiff, from the prosecution. And if the prosecution don't make out a case sufficiently or any more than you have stated, I would not require the defendant to go on the stand before I would find a verdict of 'Not guilty.'—*Mr. Ahern:* We submit the challenge.—*The Court:* Q. You have no prejudice against the defendant?—A. I have not.—Q. When you say that you have an impression that he is guilty, do you really mean that you have an impression that he is guilty at the present time.—A. No. I don't know that he is guilty.—Q. You know that it is the duty of a juror, when he is sworn to try a case, to disregard any impression that he may have? Are you prepared to say now that you can set any impression that you have had aside and enter upon the trial of this case as if you had never heard anything about it?—A. Certainly, I say that.''

It cannot be said, as matter of law, that the juror was by this evidence conclusively shown to be biased. He did admit that he had an impression that the defendant was guilty, and that until he heard evidence to remove it that impression would remain, but it had generated no prejudice against the defendant, and would not prevent him from trying the case fairly. He was clear to the point that to find a verdict against the defendant he would require full proof by the prosecution. The evidence sustains the ruling of the court. (*People* v. *Wells,* 100 Cal. 227; *People* v. *Fredericks,* 106 Cal. 559; *People* v. *Owens,* 123 Cal. 487.)

2. The defendant, testifying in his own behalf, stated: ''I knew the woman as Maria Barera. She was my woman. We had been living together about nine years. We was known among our friends and relations as man and wife.'' He was then asked by his counsel: ''Q. During all the time that you have been living together as man and wife, what was the conduct of your wife? Was she straight?'' The court sustained the objection of the prosecution to this question, defendant excepting. Defendant then proceeded as follows: ''We thought a great deal of each other and loved each other or we wouldn't have been living together. I never had any trouble before this night with my wife.'' The question to which the objection and ruling applied was not very definite, but sup-

posing it to have meant what counsel contend it meant, it was really answered by what followed: "I never had any trouble," etc. This was equivalent to saying that he had never had occasion to tax her with infidelity. But if the question had not been answered at all, it is impossible to see how the defendant was injured. Neither an affirmative nor negative answer would have had any bearing upon the question of express malice—the only question in the case. The same observation applies to the ruling sustaining the objection of the people to the question, "During all that time who was it that supported the family?"

The question was asked the defendant whether his wife stopped at Lou Ross's house by his consent, to which the people's objection was sustained, but the ruling was entirely disregarded by the defendant, who, without further objection, went on and detailed fully the circumstances under which the deceased went to the house of Lou Ross, and the objections and remonstrances on his part. This evidence renders it immaterial whether the ruling was correct or not.

Among the instructions requested by the defendant was the following:—

"[In this case if the killing was willful (that is, intentional), deliberate, and premeditated, it is murder in the first degree; otherwise it is murder in the second degree, and in determining the degree, any evidence tending to show the mental *status* of the defendant is a proper subject for the consideration of the jury. The fact that the defendant was drunk does not render the act less criminal, and in that sense is not available as an excuse, but there is nothing in this to exclude it as evidence upon the question as to whether the act was deliberate and premeditated.] Presumptively, every killing is murder, but so far as the degree is concerned, no presumption arises from the mere fact of killing, considered separately and apart from the circumstances under which the killing occurred. The question is one of facts, to be determined by the jury from the evidence in the case, and it is not a matter of legal conclusion, and drunkenness as evidence of a want of premeditation is not within the rule which excludes it as an excuse. Drunkenness neither excuses the offense nor avoids the punishment which the law inflicts, when the character of the offense is ascertained and determined, but

evidence of drunkenness is admissible with reference solely to the question of premeditation.

"In case of premeditated murder, the fact of drunkenness is immaterial. A man who is drunk may act with premeditation as well as a sober one, and is equally responsible for the consequences of his act. In murder in the first degree it is necessary to prove the killing was premeditated, which involves, of course, an inquiry into the state of mind under which the party committed it, and in the prosecution of such an inquiry his condition as drunk or sober is proper to be considered. The weight to be given to it is a matter for the jury to determine, and it is sufficient for the court to say to the jury that it should be received with caution, and carefully examined in connection with all the circumstances and evidence in the case."

The court in giving this instruction omitted the portion inclosed in brackets. This omission was not error, since the same proposition (that drunkenness is to be considered in determining the degree of murder) is plainly stated in that part of the instruction given.

The judgment and order of the superior court are affirmed.

McFarland, J., Shaw, J., Angellotti, J., Van Dyke, J., and Lorigan, J., concur.