[Crim. No. 358. Third Appellate District.—September 13, 1916.]

THE PEOPLE, Respondents, v. FRANK MARTINEZ, Appellant.

CRIMINAL LAW—BURGLARY—QUALIFICATION OF JURORS—IMPLIED BIAS —CONTRADICTORY ANSWERS—PROVINCE OF TRIAL COURT—REVIEW UPON APPEAL.—Where, on the impaneling of a jury for the trial of a defendant charged with burglary, some of the jurors, in reply to questions by defendant's counsel, stated that the accused would be required to produce evidence in his favor to create a reasonable doubt in their mind as to his guilt, but upon being questioned by the district attorney each declared that, if accepted as a juror in the case, he would at all times give the defendant the benefit of the presumption of innocence until his guilt was satisfactorily proved and acquit him if, after a full and fair consideration of the evidence by the light of the court's instructions upon the law, he entertained a reasonable doubt of the defendant's guilt, it was the province of the court, under this state of the record, to determine whether or not such jurors were disqualified for implied bias; and its discretion will not be disturbed on appeal unless it appears that it has been abused.

ID.—EVIDENCE—DESCRIPTION OF DEFENDANT AND COMPANION.—In a prosecution for the crime of burglary, there is no error in permitting the people to prove that the defendant and another man, who was shown to have been the defendant's companion, applied for and obtained work together, that the defendant wore a particular kind of cap, that his companion wore a particular kind and size of shoes, that footprints in the snow leading to the burglarized premises corresponded in size with the shoes worn by the two men, and that the remnants of a leather case in which one of the stolen articles was incased were found a few days after the burglary in a town toward

which the defendant and his companion were seen hastily going by foot on the night of the crime.

ID.—STATEMENTS CONCERNING POSSESSION OF STOLEN PROPERTY—ADMISSIBILITY OF.—Statements made by the defendant when placed under arrest, involving conflicting or inconsistent explanations concerning the possession of one of the stolen articles, are properly admitted in evidence, without a preliminary showing that they were voluntarily made, as they do not involve a confession of guilt.

ID.—REASONABLE DOUBT AS TO DEGREE OF CRIME—DUTY OF JURY—INSTRUCTION.—An instruction that "under the information in this case you may, *if the. evidence warrant it,* find the defendant guilty of burglary of the first degree or burglary of the second degree. Should you entertain a reasonable doubt as to which of the two degrees he is guilty, *if any,* you will give the defendant the benefit of the doubt and acquit him of the higher offense," contains no intimation that the defendant is guilty of the crime of burglary, but obviously means that, if the jury find by the proper degree of proof that the defendant committed the crime charged, but should entertain a reasonable doubt as to which of the degrees of that crime, *if any,* he was, under the evidence, guilty of, then he would be entitled to the benefit of that doubt and in that case should only be convicted of the lower degree of the crime.

ID.—CIRCUMSTANTIAL EVIDENCE—INSTRUCTION.—An instruction explaining that where circumstantial evidence is solely relied upon for the proof of an accused's connection with the commission of a crime, "any fact essential to sustain the hypothesis of guilt and exclude the hypothesis of innocence," and any single fact from which the inference of guilt is to be drawn, "must be proved by evidence which satisfies the minds and conscience of the jury to the same extent that they are required to be satisfied of the facts in an issue in cases where the evidence is direct," is not argumentative, but if it were, the defendant cannot complain of it, where the record shows that it was given and read to the jury at his request.

ID.—VERDICT OF CONVICTION—CIRCUMSTANTIAL EVIDENCE—SUFFICIENCY OF.—On appeal from a judgment of conviction of burglary in the first degree, it cannot be said that the verdict was not justified, where the proof showed the presence of the defendant and his companion in the town where the crime was committed just before such commission, the correspondence in size of the footprints on the surface of the snow leading to and from the burglarized building with the shoes worn by the defendant and his companion, the finding at a place in which direction the accused were seen traveling, of a part of the leather case in which one of the stolen watches was incased when taken from the building, a short time after the burglary, the possession by one of the parties of one of the stolen watches, and the contradictory statements made by the defendant and his companion in attempting to explain such possession.

APPEAL from a judgment of the Superior Court of Plumas County, and from an order denying a new trial. J. O. Moncur, Judge.

The facts are stated in the opinion of the court.

J. D. McLaughlin, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondents.

HART, J.—The defendant was convicted of burglary of the first degree, and appeals from the judgment and the order denying him a new trial.

He claims that his rights were prejudiced by alleged errors of the court in disallowing challenges of certain veniremen for implied bias, in allowing certain testimony to be received into the record, and in the giving of certain instructions. It is charged that he was prejudiced by alleged misconduct of the district attorney and insisted that the evidence does not support the verdict.

The alleged crime was committed at the town of Portola, in Plumas County, between the hours of 8 and 10 o'clock of the evening of February 13, 1916. The building entered was the property of one Arkin. Therein he carried on the retail drug business and also had living-rooms, where he and his family resided. A portion of the store was occupied by one Johnson as a jewelry-store and repair-shop. On the evening named, Arkin and his family attended a moving-picture show located on the opposite side of the street from the said store. He left the store at about 7:30 o'clock in the evening. Johnson had previously left the store and also attended the picture show mentioned. Arkin returned to the store at about fifteen minutes after 9 o'clock on that evening and discovered that a window to one of his living-rooms in the rear of the building had been broken so as to admit of the easy entrance of a person into the building. An investigation following this discovery disclosed that the jewelry case belonging to Johnson had been broken into and a large quantity of watches, lockets, and other like articles had been abstracted therefrom, aggregating in value the sum of five hundred dollars approximately.

The defendant and another man, known as Ed. Martinez and also as Ed. Leal, were, within a few days after the burglary was committed, arrested at Gerlach, Nevada, and on the person of Ed. Martinez was found one of the stolen watches. Other facts developed at the trial will be stated as we consider some of the points, particularly the contention that the verdict is not sufficiently supported.

1. Objections by way of challenges for implied bias were interposed to the legal competency of four of the talesmen to serve as jurors in the case. These were jurors McKenzie, Grother, Guidici, and Ohlsen.

In reply to a question upon *voir dire* by the attorney for the defendant, McKenzie stated that the accused would be required to "produce evidence in his favor to create a reasonable doubt" in his mind as to the defendant's guilt. Grother and Ohlsen, also replying to questions by defendant's counsel, made similar replies. Guidici affirmatively answered the following question propounded by defendant's attorney: "If there was a reasonable doubt in your mind as to the guilt of the defendant would you presume, or indulge in any possibilities that he would be guilty, to overcome that doubt?" Each of the jurors, however, on being questioned by the district attorney, declared that, if accepted as a juror in the case, he would, in determining the question of the guilt or innocence of the defendant, be governed entirely by the evidence and the law as the court stated it to them; that he would, at all times, give the defendant the benefit of the presumption of innocence until his guilt was satisfactorily proved and acquit him if, after a full and fair consideration of the evidence by the light of the court's instructions upon the law, he entertained a reasonable doubt of his guilt. "Under this state of the record upon the question whether such jurors possessed such bias as would prevent them from trying the case fairly and impartially, it was for the court to determine that preliminary issue, and in all such cases the court's discretion will not be disturbed on appeal unless it appears that it has been abused." (*People* v. *Conte*, 17 Cal. App. 771, 777, [122 Pac. 450].) As was well said in *People* v. *Ryan*, 152 Cal. 364, 371, [92 Pac. 856], where the precise proposition under consideration was discussed: "Many persons, competent as jurors, have not given much attention to such subjects, are inexperienced as witnesses, and

are unable readily to comprehend the force and effect of the language in which such questions are couched, and they generally answer without reflection as to the effect of their own words. Such contradictions are by no means infrequent, if, indeed, they are not the rule, rather than the exception. The trial court must decide which of the answers most truly shows the juror's mind. . . . Where there are such contradictions its decision is binding upon this court,'' citing a large number of cases. As is readily to be noted, the challenged veniremen in this case each made conflicting and directly contradictory statements as to the course he would pursue in the discharge of his duty as a juryman—one statement which would disqualify him and another which would make him legally competent to serve—and, under these circumstances, it was, of course, with the trial court to decide, upon his examination as a whole, whether he was in all respects qualified to try the issue fairly and impartially. There is nothing upon the face of the record here indicating that in its decision in any of the instances referred to the trial court abused its discretion and, therefore, the conclusion of that court upon the question is conclusive upon this court.

2. The next assignments involve objections which were made to the reception into the record of certain testimony. The case made against the accused was by evidence of circumstances, no direct proof of his guilt having been presented. The defendant, with Ed. Martinez or Leal, together applied for and secured work as section-hands for the Western Pacific Company at Portola, a few days prior to the date of the burglary. They worked for the company for a few days only. They were subsequently seen together on the streets of Portola. The people, over objection by the defendant, were permitted to prove that the two men applied for and obtained work together; that the defendant wore a particular kind of cap while in Portola; that his companion wore a particular kind and size of shoes; that there was considerable quantity of snow on the ground in Portola at the time of the burglary, this testimony being allowed in connection with testimony that there were observed on the surface of the snow the impressions of human feet and that measurements were made of the footprints so observed which precisely compared in measurement with the shoes of the defendant and his companion; that the remnants of a leather

31 Cal. App.—27

case in which one of the watches taken from the store was kept were found a few days after the burglary at a place called Hawley, a short distance from Portola, and toward which place the defendant and his companion were seen hastily going by foot in the neighborhood of 10 o'clock of the night the building was entered, and other like circumstances tending in a greater or less degree to place upon the accused and Ed. Martinez or Leal, responsibility for the crime. All this testimony, it is here claimed, was improperly received. Not so. The two men were shown to have been companions and at all times in the company of each other from the time they procured work with the railroad company until they were placed under arrest at Gerlach, Nevada. The people, therefore, were entitled to the benefit of any testimony bearing upon the description of the two men and their wearing apparel, or which disclosed their joint movements and flight, or their actions and declarations in the presence of each other having any tendency to show or point to their guilt of the crime charged.

3. It was not necessary to make a preliminary showing that the statements made by the defendant when placed under arrest, and those made by Ed. Martinez at the same time in the defendant's presence, were voluntarily made. The statements did not involve a confession of guilt. They merely involved conflicting or inconsistent explanations of the possession of the stolen watch found in the possession of Ed. Martinez. In their conversations with the officers, both denied that they were connected in any manner with the crime or that they had any knowledge of it.

4. The ruling allowing the witness, Johnson, to state a conversation which he testified he overheard between the defendant and Ed. Martinez while they were confined in the county jail at Quincy, awaiting trial, was not erroneous. The conversation was carried on between the two men in the Spanish language, and the special ground of the objection to the testimony was that Johnson did not fully understand that language. But the witness testified that he could understand Spanish when spoken to some extent, and related only that part of the conversation which he testified that he clearly understood.

5. It was not error to sustain the objection to the following cross-question to the witness, Johnson: "You had the

same powers of observation as anyone that was with you had, or didn't you?'' The question followed an unsuccessful effort to secure a statement from the witness as to the relative distances between two houses located back of the Arkin store and between one of those houses and said store. The question was argumentative in character and, as framed, called for a conclusion of the witness. But it is probable that what counsel intended to ask was whether the witness' *opportunity* for observation was equal to that of any other person with him at the time they were inspecting and following the footprints in the rear of the store. But, even so viewing it and if in that view a proper question, it is very clear that, inasmuch as the witness, after considerable questioning on that line, showed that he had formed no judgment as to the distances so sought to be shown, he could have given no more information upon the subject than he did, whatever his *powers* of observation might be or his *opportunity* for observation on that occasion might have been.

There are some other rulings similar to the last above considered animadverted upon in the briefs of the defendant, but even if not strictly correct, they were obviously harmless in their effect.

6. There was nothing detrimental to the rights of the defendant either in the action of the court in refusing to permit his attorney to explain the object of a certain line of the cross-examination of the witness, Johnson, and to which the district attorney objected, or in the language used by the court in ruling upon the proposition. The witness, Johnson, had been exhaustively cross-examined upon the question as to the number of houses situated on a street back of the street on which Arkin's store is situated. The witness declared that he was able to remember and say that there was more than one house on a certain part of the back street, whereupon counsel asked him: "You are as sure of this as you are of any other part of your testimony?" to which question an objection by the district attorney was sustained. Counsel then attempted to explain that he desired to test the memory of the witness as to the number of houses, and upon objection by the district attorney, the court ruled and said: "I don't think that particular part is material enough to take any time with it." The question is of an argumentative character and one which, though frequently asked of a wit-

ness on cross-examination, is really meaningless. Either an affirmative or negative answer to the question would not have the effect of adding to or detracting from his credibility or the weight of his testimony.

7. It is insisted that the court, in instruction No. 6, as given, told the jury that the defendant was guilty of one or the other of the two degrees of burglary. Said instruction reads: "Under the information in this case you may, *if the evidence warrant it,* find the defendant guilty of burglary of the first degree or burglary of the second degree. Should you entertain a reasonable doubt as to which of the two degrees he is guilty, *if any,* you will give the defendant the benefit of the doubt and acquit him of the higher offense." It seems to us that the language of said instruction is so plain and clear as to put the meaning thereof beyond all doubt or even cavil. It obviously means that, if the jury find by the proper degree of proof that the defendant committed the crime charged, but should entertain a reasonable doubt as to which of the degrees of that crime (Pen. Code, sec. 460), *if any,* he was, under the evidence, guilty of, then he would be entitled to the benefit of such doubt, and in that case should be convicted only of the lower degree of the crime. It would seem to be hardly necessary to say that nowhere in said instruction does the court intimate that the defendant is guilty of the crime of burglary.

8. Instruction No. 16 is challenged upon the ground that it is argumentative. It explained that, where circumstantial evidence is solely relied upon for the proof of an accused's connection with the commission of a crime, "any fact essential to sustain the hypothesis of guilt and exclude the hypothesis of innocence," and any single fact from which the inference of guilt is to be drawn, "must be proved by evidence which satisfies the minds and conscience of the jury to the same extent that they are required to be satisfied of the facts in an issue in cases where the evidence is direct." We see nothing legally objectionable in the instruction; but, if it were amenable to just criticism, the defendant cannot complain of it, since the record shows that it was given and read to the jury at his request.

9. The general instructions preferred by the defendant and disallowed by the court we have carefully examined, and find that they involved the statement of principles fully and

clearly submitted to the jury in the court's charge. It is, therefore, unnecessary to give them special consideration.

10. We cannot say that the verdict was not justified. It at the least appears to be sufficiently supported by the proofs, and this is all that is required to put it beyond the power of a reviewing court to set aside a verdict, so far as the evidence is concerned. We have already stated that the evidence was not direct but consisted wholly of circumstances. Some of the most important of these have been adverted to. It is not necessary to further rehearse them herein. There are, however, several other circumstances of no inconsiderable significance, when considered with the other circumstances, and they are: 1. That, on the evening of the burglary and after Arkin and family and Johnson had left the burglarized building and gone to the picture show, a man answering the description of the defendant as to stature, build, and headgear, was seen standing in a sort of hallway leading into the Arkin drug-store and peering through the window of said store; 2. That, when the defendant and Ed. Martinez were first searched at Gerlach, the watch was not found on the person of either. An Ingersoll watch of the value of one dollar was found on the person of Ed. Martinez, who declared to the officers that that was the only watch they had. In this connection it was shown that after Ed. Martinez was searched he stepped up to and near the defendant, and that the two men were thereafter again searched and a gold watch, positively identified by Johnson as one of the watches stolen from his store, was found on the person of Ed. Martinez; 3. That the defendant was heard to ask Ed. Martinez, while the two were confined in jail, if the latter had "told anything" to the officers, the natural inference from which question was whether Ed. had made any statement to the officers of an incriminatory character concerning the case or their possession of a part of the stolen property.

There is, then, this situation presented here, so far as the proof is concerned: The presence of the defendant and his companion in Portola just before the burglary was committed and thus opportunity to commit the crime available to them; the correspondence in size of the footprints on the surface of the snow leading to and from the building with the shoes worn by the defendant and his companion; the finding at Hawley, in which direction the accused were seen traveling,

of a part of the leather case in which one of the stolen watches was incased when taken from the store, a short time after the burglary; the possession by one of the parties of one of the stolen watches, and the contradictory statements made by the defendant and his companion in attempting to explain such possession. These, with the other circumstances mentioned, make out what may well be deemed a strong circumstantial case. At all events, if, as appears to be so, the jury believed the circumstances and the evidence by which they were shown, we cannot say, as a matter of law, that they thus arrived at an erroneous conclusion.

11. The last point calling for consideration involves the charge of misconduct on the part of the district attorney during the progress of the trial. The most serious of the several objections under this head may be shown by the following colloquy: Mr. McLaughlin: "While Mr. Myers [a witness for defendant] is coming, we will ask to strike out all the testimony in this case in regard to those shoes. The prosecution had those in their possession at one time, and could produce them here as an exhibit, if they had used due diligence; and we object to the shoes being used." Mr. Kerr (district attorney): "We object to the statement of counsel that we had the shoes that got away from us before this trial was started through no fault of the prosecution." Mr. McLaughlin: "Or defendant." Mr. Kerr: "You tell us where they are and we will attempt to get them in here." Mr. McLaughlin: "You probably know as much about their whereabouts as I do, Mr. Kerr, and we resent the insinuation in the remark." Mr. Kerr: ". . . I certainly apologize if he [attorney for defendant] takes it as a personal proposition, for it wasn't meant that way."

It is, of course, always improper for an attorney in the trial of a case before a jury to make any remark pregnant with an insinuation that either party to the action, or any party acting on the suggestion or in the interest of one of the parties to the action, has suppressed testimony or disposed of physical objects so that they may not be available for use as testimony at the trial and which, upon inspection by the jury, might tend to weaken the case of one of the parties.

In the present case, both the district attorney and the attorney for the defendant, during the course of the discussion, made statements which should not have been made in

the presence and hearing of the jury. While such conduct on the part of lawyers during the trial of a warmly contested case is generally the result of their zeal for the interests of their clients, and not intended as means for bringing some fact before the jury which it is not legally proper for them to know, it often results seriously to the rights of the parties and may lead to gross injustice. In this case, however, it is reasonably probable that the remarks of the attorneys made no impression upon the jury. They involved a charge and counter-charge by two persons, in theory at least hostile to each other, upon a matter not of overruling importance, since, as we have shown, there were many other inculpatory circumstances of a convincing character brought out against the accused than the circumstance of the footprints in the snow answering to the description of the shoes worn by the defendant and Ed. Martinez at the time of their arrest. The putting of the shoes themselves in evidence could have accomplished no more than to confirm or confute the testimony showing that, in size, they corresponded with the footprints; and if said testimony had been so confirmed or corroborated, nothing would have been added thereto, and if thus refuted, then the result would merely have been to destroy only one circumstance, important, it is true, but which still left many other circumstances the verity of which did not rest upon the production of the shoes and which, on their face, were sufficient to justify a verdict of guilty.

We have not succeeded in discovering the slightest semblance of misconduct by the district attorney in any of the several other assignments of misconduct on the part of that official. Those assignments, therefore, do not merit and will not be given special notice.

We have now considered all the points to which we conceived special attention should be given, and, finding no prejudicial error in the record, the judgment and the order appealed from are affirmed.

Chipman, P. J., and Burnett, J., concurred.