[Crim. No. 2128. In Bank.—April 2, 1918.]

THE PEOPLE, Respondent, v. WILLIAM M. BEGGS,
Appellant.

CRIMINAL LAW—EXTORTION—THREATENING THIEF WITH PROSECUTION—
GOOD FAITH IMMATERIAL.—Under section 518 of the Penal Code,
obtaining payment from a thief of the value of property stolen by
him, by threatening him with an accusation and prosecution thereon
unless he makes such payment, is extortion without regard to the
exercise of good faith in exacting the amount justly due.

ID.—ACCOMPLICE.—The victim of an extortion is not an accomplice.

ID.—EVIDENCE—VALUE OF STOLEN PROPERTY.—On the trial of an attor-
ney for extortion in obtaining two thousand dollars by threats to
prosecute a thief for stealing certain goods, testimony of the
prosecuting witness as to the value of the stolen goods, which did
not exceed fifty dollars, was material as tending to prove fear.

ID.—HARMLESS ADMISSION OF EVIDENCE—CONVERSATIONS OF PROSE-
CUTING WITNESS WITH THIRD PERSONS—PROMISE TO SHOW CON-
SPIRACY—FAILURE TO OFFER PROOF—DENIAL OF MOTION TO STRIKE
OUT.—Where on such trial evidence was offered of conversations
between the prosecuting witness, a police officer, and a third person,
and an objection that it was hearsay was overruled, on the state-
ment of the district attorney that he would show the existence of
a conspiracy between the defendant, the police officer, and the third
person referred to, but no such proof was offered, and at the close
of the people's case a motion by the defendant to strike the evi-
dence from the record was denied, although the rulings of the trial
court cannot be upheld upon the theory that there was evidence of

the existence of a conspiracy, the evidence was admissible as part of the *res gestae,* where it tended to establish the fact that at the time of and immediately following the making of the threats, the prosecuting witness· was laboring under fear induced by such threats.

ID.—WRONGFUL USE OF FEAR—OPERATING CAUSE OF CONSENT OF VICTIM OF EXTORTION.—To constitute extortion the wrongful use of fear must be the operating cause which produces the consent of the victim of extortion to part with his property.

ID.—ARGUMENT.—Statements of the district attorney in his argument to the jury in such a case, in which he described the defendant as an astute lawyer of experience and as one who "certainly must be experienced in this class of shakedown," and stating that "there is a proper, sound, logical inference from Beggs' conduct to say, he must be experienced in this class of shakedown," were unprejudicial, especially in view of an instruction that statements in argument, not supported by the evidence, were not evidence and should be disregarded by the jury.

ID.—MISCONDUCT OF DISTRICT ATTORNEY — ERROR NOT ASSIGNED.— Where an improper statement of the district attorney to the jury as to the lack of right of the people to appeal or the extent of review granted by law to either party on appeal is not assigned as misconduct, and no request is made that the court instruct the jury to disregard it, such error cannot be considered on appeal.

ID.—JURY TRIAL— DENIAL OF PEREMPTORY CHALLENGES.—The trial court did not err in denying defendant's peremptory challenges to certain prospective jurors.

ID.—CHANGE OF VENUE PROPERLY DENIED.—It is held that a motion to change the place of trial of this action, on the ground that a fair and impartial trial could not be had in the place where it was commenced, was properly denied, especially where the record showed a sharp conflict in the evidence.

APPEAL from a judgment of the Superior Court of Santa Clara County. W. A. Beasly, Judge; Franklin A. Griffin, Acting Judge.

The facts are stated in the opinion of the court.

James P. Sex, R. P. Henshall, R. C. McComish, and A. H. Jarman, for Appellant.

U. S. Webb, Attorney-General, John H. Riordan, Deputy Attorney-General, Arthur M. Free, District Attorney, and Archer Bowden, Deputy District Attorney, for Respondent.

VICTOR E. SHAW, J., *pro tem.*—Defendant, who is an attorney at law, appeals from the judgment pronounced upon the verdict of a jury finding him guilty of the crime of extortion as defined in section 518 of the Penal Code.

The verdict was based upon facts which the evidence tended to establish, as follows: Joseph Steining was the proprietor of a store from which goods had from time to time been stolen. Acting upon information which pointed to Joseph N. Da Rosa, an employee of the store, as the one guilty of the thefts, Steining caused him to be arrested by a detective and taken to the police station, where, in the absence of a complaint filed, he was "booked" as charged with the crime of petit larceny. At the time of his arrest Da Rosa admitted that he was guilty of purloining certain articles, including two suits of clothes, the value of all of which did not exceed fifty dollars, which sum he then offered to pay Steining. On the following morning Mr. and Mrs. Steining, accompanied by defendant, who meanwhile had been employed by them as an attorney in the matter, went to the police station where, in response to a request made by defendant, he was permitted to see Da Rosa, who was brought into a private office, and in the interview had, defendant learned that Da Rosa had about two thousand five hundred dollars on deposit in two banks. Accompanied by a police officer, Da Rosa was taken by defendant to the house of his sister, where he said he kept the bank-books, and after a prolonged search one of them was found and either taken by or turned over to defendant, who, with the officer, accompanied by Da Rosa, went to the office of defendant, where, leaving the officer in an outer room, he took Da Rosa alone into his private office, where he impressed upon him the gravity of his offense, stating that he could be sent to San Quentin, and that unless he immediately paid defendant two thousand dollars for the purpose of settling with Steining, he would be sent to prison for seven or ten years. As a result of what defendant said and by reason of the fear induced by such threats, Da Rosa went with defendant to the banks where his money was deposited and, as directed by Beggs, signed receipts upon which two thousand dollars was drawn and delivered to defendant in payment of what he claimed to be due Steining on account of the thefts committed by Da Rosa, nine hundred dollars of which sum defendant paid to

CLXXVIII Cal.—6

Steining. It is unnecessary for our purpose to quote further from the testimony. Suffice it to say that it appears therefrom that Da Rosa stole certain articles from Steining, who, after having him lodged in jail upon a charge of petit larceny and without at any time filing a complaint against him, employed defendant as his attorney, who, by means of threats that he would send him to state prison for seven to ten years, induced him to pay two thousand dollars, the purpose of which payment, as claimed by defendant, was to compensate Steining for loss due to thefts committed by Da Rosa.

Several alleged errors in the trial are asserted as grounds for reversal, chief of which in importance is the claim that the court erred in refusing at defendant's request to give certain instructions to the jury, among which were the following: "The effort on the part of a creditor to collect a debt by threat to accuse the debtor of the crime out of which the debt arose does not constitute extortion, nor does it cover the case of an owner who demands from an employee compensation for property which he has stolen or embezzled. The threat of one to prosecute for the theft of his property unless settlement is made does not constitute extortion. In order to constitute extortion there must exist in the person making the threats an intent to gain unlawfully." Other instructions of like import were requested and refused. While refusing the instruction so requested, the court instructed the jury that "the law does not permit the collection of money by the use of fear induced by means of threats to accuse the debtor of crime. It makes no difference whether Da Rosa stole any goods from Steining, nor how much he stole"; and that "it is your duty to convict the defendant, even though you should also find that he believed that Da Rosa was guilty of the theft of Steining's goods in an amount either less than, equal to, or greater than any sum of money obtained from Da Rosa." Other like instructions were given, the effect of which was to withdraw from the consideration of the jury all questions as to the good faith with which defendant acted in thus enforcing payment of the money alleged to be due to Steining.

Section 518 of the Penal Code provides that, "Extortion is the obtaining of property from another, with his consent,

induced by a wrongful use of force or fear, or under color of official right.''

The consent of the injured party in surrendering his property must, in the language of the statute, be ''induced by the wrongful use of fear.'' This implies there may be a rightful use of fear. What meaning is to be ascribed to the word wrongful? Is it wrongful for A, from whom B has stolen goods, to threaten the latter with prosecution unless he pay the value thereof, and thus, by means of the fear induced by such threat, obtain from B that which is justly due to A? In our opinion, the answer is found in provisions of the code other than section 518, which, read in connection with section 518, clearly show that the use of fear induced by such threats as a means of collecting a debt, is wrongful. Thus section 519 of the Penal Code provides: ''Fear, such as will constitute extortion, may be induced by a threat, either: 1. To do an unlawful injury to the person . . . of the individual threatened . . . 2. To accuse him, . . . of any crime.'' And section 523 of the Penal Code provides that one who, with intent to extort money from another by means of a letter containing ''any threat such as is specified in section 519, is punishable in the same manner as if such money . . . were actually obtained by reasons of such threat.'' Section 650 of the Penal Code makes it a misdemeanor for one by letter to threaten another with the accusation of a crime. These provisions, all adopted at the same time and relating to the same subject matter, clearly indicate that the legislature in denouncing the wrongful use of fear as a means of obtaining property from another had in mind threats to do the acts specified in section 519, the making of which for the purpose stated is declared to be a wrongful use of fear induced thereby. The first subdivision of section 519 provides that fear, such as will constitute extortion, may be induced by a threat to do an *unlawful* injury, thus excluding fear induced by threat to do a lawful injury. (*People v. Schmitz*, 7 Cal. App. 330, [15 L. R. A. (N. S.) 717, 94 Pac. 407, 419].) No such qualifying words are used in other subdivisions of the section. Subdivision 2 thereof, under which the prosecution in the instant case was had, in effect declares that fear as a means of extortion may be induced by a threat to accuse one of crime. The absence of any qualifying words, such as are found in subdivision 1 of the section,

is significant. In reading section 518 with sections 519, 523, and 650, we cannot escape the conclusion that, assuming Da Rosa had in fact stolen goods of the value of two thousand dollars from Steining, the threats made by defendant to prosecute Da Rosa therefor unless he paid the value of said goods, which sum of two thousand dollars the latter, by reason of fear induced by such threat, paid, constitutes the crime of extortion. It is the means employed which the law denounces, and though the purpose may be to collect a just indebtedness arising from and created by the criminal act for which the threat is to prosecute the wrongdoer, it is nevertheless within the statutory inhibition. The law does not contemplate the use of criminal process as a means of collecting a debt. To invoke such process for the purpose named is, as held by all authorities, contrary to public policy. Hence, good faith, or the fact that the end accomplished by such means is rightful, cannot avail one as a defense in such prosecution, any more than such facts would constitute a defense where one compels payment of a just debt by the threat to do an unlawful injury to the person of his debtor. In line with this view is the opinion in the case of *Morrill* v. *Nightingale,* 93 Cal. 452, [27 Am. St. Rep. 207, 28 Pac. 1068]. There, the party, by reason of fear induced by a threat to prosecute him for embezzlement, gave a note secured by mortgage in settlement of the debt created by the embezzlement. In an action to foreclose the mortgage he pleaded as a defense the facts under which the execution of the mortgage was procured. The defense pleaded was sustained, the court in its discussion saying: "It certainly would be no defense to the accusation of extortion that the charges or publications threatened to be made by the defendant and by which he obtained valuable property were true. The truth or falsity of these matters form no element in establishing the guilt or innocence of a defendant charged with extortion." Conceding this language unnecessary to the decision in that case, it is deemed applicable to the facts involved in the case now under consideration.

If, instead of paying the two thousand dollars, Da Rosa under the circumstances shown to exist, had given his note and a mortgage securing the same, then, under the authority of the case cited, payment thereof could not have been enforced, the reason therefor being that execution of the secur-

ity was procured by the wrongful use of fear induced by the threat to prosecute him for the crime out of which the indebtedness arose. If it be a wrongful use of fear in the one case, is it not likewise an equally wrongful use of fear in the instant case?

Our interpretation of the statute finds full support in an able and exhaustive opinion of the supreme court of South Dakota in a case entitled *In re Sherin,* 27 S. D. 232, [Ann. Cas. 1913D, 446, 40 L. R. A. (N. S.) 801, 130 N. W. 761], where the court, having under consideration code provisions identical with sections 518, 519, and 523 of our Penal Code, said: "The word 'wrongful,' as used in the statute, has no reference whatever to the question of the justness of the ultimate result sought, but relates solely to the methods used to obtain such results." In *State* v. *Bruce,* 24 Me. 71, it is said: "A person whose property has been stolen cannot claim the right to punish the thief himself, without process of law, and to make him compensate him for the loss of his property by maliciously threatening to accuse him of the offense." In the case of *People* v. *Eichler,* 75 Hun, 26, [26 N. Y. Supp. 998], it is said: "The moral turpitude of threatening, for the purpose of obtaining money, to accuse a guilty person of the crime which he has committed, is as great as it is to threaten for a like purpose an innocent person of having committed a crime. The intent is the same in both cases, to acquire money without legal right by threatening a legal prosecution." Appellant's contention that an honest effort on the part of a creditor to collect a just debt by accusing or threatening to accuse the debtor of the crime out of which the debt arose or with which it is connected does not come within the purview of the statute, finds apparent support in a number of cases. Such, indeed, is the conclusion of the court in the case of *People* v. *Griffin,* 2 Barb. (N. Y.) 427, followed by *State* v. *Hammond,* 80 Ind. 80; *Mann* v. *State,* 47 Ohio St. 556, [11 L. R. A. 656, 26 N. E. 226], all of which cases, however, appear to have been based upon statutes materially different from the provisions under consideration.

The plain import of the language of our code is that to threaten a thief with an accusation and prosecution based thereon, unless he pays the value of property stolen, and which by reason of fear induced by such threat he does pay,

is extortion within the meaning of section 518 of the Penal Code; and this without reference to the exercise of good faith in exacting the amount justly due. In effect, the jury were so instructed. There was no error in the rulings of the court as to instructions given and requested.

There is no merit in the contention that Da Rosa was an accomplice of defendant. It is the act of defendant that constituted the crime, and in this act Da Rosa had no part other than as his will was coerced by the wrongful threats which induced the fear that in the absence of consent he would be sent to state prison. In *People* v. *Coffey*, 161 Cal. 432, 446, [39 L. R. A. (N. S.) 704, 119 Pac. 901, 906], in discussing the point the court by way of illustration said: "To the crime of seduction two parties are necessary, but the co-operation of the seduced is not criminal. She is a victim and she is not therefore an accomplice of the seducer." So here, Da Rosa was a victim in the same sense as though Steining, to whom he was admittedly indebted, had at the point of a gun enforced collection by a threat to inflict bodily injury upon him. Cases of bribery and kindred crimes cited by appellant have no application, for they involve a willing co-operation in the commission of the offense. In reaching this conclusion reference is had to section 1111, of the Penal Code, as it stood prior to the amendment thereof in 1915, when the crime was committed. Assuming there was, as claimed, an implied agreement on the part of Steining not to prosecute, if the money was paid, nevertheless, as we have seen, there was no voluntary assent by Da Rosa, without which it cannot be said that he was a party to an agreement for the compounding of a felony. Moreover, defendant is not being prosecuted for the compounding of a felony, but for extortion, wherein Da Rosa was the victim of his wrongful acts.

Error is predicated upon the fact that the court, over defendant's objection, permitted the prosecuting witness to testify to the value of certain articles, the theft of which he admitted. A necessary element of the crime was fear induced by the threat. The making of the threat being established, did it incite fear which operated upon the mind of Da Rosa in parting with his money? If the value of the goods stolen did not exceed fifty dollars, why, except for the fear induced by such threat did he pay two thousand

dollars in liquidation of a liability, recovery for which in a civil action could not exceed the former sum? While, under our interpretation of the statute, defendant's guilt did not depend upon the value of the goods stolen, the testimony was, nevertheless, material as tending to prove the existence of fear, which he claimed was induced by the defendant and without which the offense would not be established.

Neither was defendant prejudiced by reason of the court sustaining an objection to a question asked by the prosecuting witness on cross-examination, as follows: "And you would have been willing to pay two thousand dollars to get out of trouble, whether they threatened you or not?" The question was proper, in that it was sought thereby to ascertain whether the fear induced by the threat was the cause which prompted him to pay the money. The statute can only mean that the wrongful use of force or fear must be the operating or controlling cause which produced the consent, and hence, if some other cause were the primary and controlling one in inducing the consent, there would be no extortion. (*People* v. *Williams,* 127 Cal. 212, [59 Pac. 581].) Conceding it to be error, it is, nevertheless, apparent that no prejudice resulted therefrom, for the reason that it was substantially and fully covered by subsequent like questions asked of the witness, to all of which he gave negative answers.

The admission of evidence as to conversations had with other persons by Da Rosa at which defendant was not present is assigned as prejudicial error. When the evidence was offered defendant objected to its introduction upon the ground that the conversations were hearsay and not had in the presence of the defendant. Thereupon the district attorney stated that he would show that a conspiracy existed between defendant, Tevis, and Police Officer Condron. Upon such representation the court, in the absence of any evidence tending to establish a conspiracy, admitted the evidence. No proof that a conspiracy existed was offered, and at the close of the people's case defendant moved the court to strike from the record all evidence touching the conversations so had without defendant's presence. In response to the motion, the court said: "The thing is, the testimony is in now, and I don't see how you are going to strike it out of the minds of the jurors, even if the court would grant the motion to strike out the testimony from the record." The record

discloses no evidence tending even in a remote degree to establish that Condron, Tevis, and Da Rosa's father, or either of them, participated in the commission of the crime with which defendant was charged. Hence, the admission of the testimony and ruling of the court in denying defendant's motion to strike it out cannot be upheld upon the theory that there was evidence of the existence of a conspiracy. We are of the opinion, however, that in so far as the evidence could have had any influence upon the minds of the jury in arriving at a conclusion, it was admissible as part of the *res gestae.*

To constitute extortion the wrongful use of fear must be the operating cause which produces the consent. As said in *People* v. *Williams, supra:* "If some other cause were the primary and controlling one in inducing the consent, then there would be no extortion." As shown by the record, the chief direct proof of the making of the alleged threats by defendant is the testimony of Da Rosa as to what defendant did and said when they were alone in the latter's private office. Da Rosa's testimony as to these occurrences is flatly contradicted by defendant, whose story of the transaction is, in effect, that no threats whatever were made, and that Da Rosa when he met him at the jail the morning after his arrest expressed a desire to make amends for his misdeeds, and when told that Steining claimed to have lost by theft goods of the value of two thousand dollars during the preceding nine months, voluntarily said he was willing to pay said sum, hence, the existence or nonexistence of the chief element of the offense depended for its determination upon whether the jury believed the testimony of Da Rosa or that of defendant. The evidence complained of relates to three conversations, one of which was between Philip Da Rosa, father of the prosecuting witness, and Tevis, who, as a friend of the father, went with him to see his son the morning after the arrest. As to this conversation, Da Rosa's father testified that while at the city hall in company with Tevis waiting to see his son, and before defendant had seen him, "I told Mr. Tevis better go and see Mr. John S. Williams, and Mr. Tevis told me he don't need it, anything you need, I am just as good. . . . He said you don't have to go to see Mr. Williams because I understand the law myself. I am here. If you need anything I am here to help you out.

I know something about the law." This conversation so had between the father and Tevis had reference solely and alone to the propriety of employing an attorney for his son. It had no bearing whatever upon the guilt or innocence of the defendant. While thus clearly immaterial, it is nevertheless impossible to conceive any theory upon which the substantial rights of the defendant could have been prejudiced by reason of the testimony.

As stated, defendant in his interview with Da Rosa in the jail learned that he had money on deposit in two banks. He was also told that the books evidencing such deposits were at the house of Da Rosa's sister, Mrs. Dutra. For the purpose of securing these bank-books, the presentation of which was a necessary requirement in withdrawing the money, the defendant took Da Rosa with Officer Condron, having custody of him, to Mrs. Dutra's house, from which place, having found one of the books only, they went to defendant's office. As they were leaving the office to make a search for the other bank-book, after the making of the threats and before payment of the money, Da Rosa saw his father and Tevis on the sidewalk near defendant's automobile which they were using, and, as he testified: "I did rush up a little faster to speak to my father, and I told him to go to J. S. Williams because they were taking my money away. Somebody robbed my money." This statement to his father was in Portuguese, language with which defendant was unacquainted. In substance, the testimony as to what Da Rosa said to his father was corroborated by the evidence of the latter, who was permitted to testify that owing to the fact that he did not fully understand his son, he asked Mr. Tevis: "My son talk about Williams, maybe he wants to see Mr. Williams. Mr. Tevis reply: 'Oh, he don't need to go to see Williams at all. He don't have to go and see Mr. Williams, because the boy is going to pay a little bit, small amount, and don't have to see Mr. Williams then. It will be all right.'" The conversation had by Da Rosa with Condron, the officer in whose custody he had been placed while permitted to accompany defendant, occurred in the private office of defendant while he was absent from the room and after the making of the threats and before the money was paid. As stated by Da Rosa, he asked Condron who he was, when he "lifted his coat and show me a star and said: 'I am

sheriff, Police Detective Condron,' and I complained to him about taking my money that way, if he thought it was right, and been working so hard for it in canneries, etc., and save every cent possible for my next operation, and he said: 'Well, that is all right; they know what they are doing.' I said: 'But I haven't got no witnesses here; what can they do,— can they send me to San Quentin?' He said: 'They fix everything over there.' He didn't say where at all." This, in substance, covers all the evidence of conversations had without the presence of defendant. Like the discussion first referred to had between the father and Tevis as to the propriety of consulting an attorney, that part of the second conversation as to what Tevis said to the father is immaterial, and, therefore, should not have been admitted. Nevertheless, we are unable to perceive how it could have had any prejudicial effect upon the rights of the defendant in the deliberations of the jury. The declarations of Da Rosa to his father with reference to employing Mr. Williams, an attorney, assigning as a reason therefor that they were taking his money, and the statement to Officer Condron while in his custody in defendant's office, were spontaneous utterances made during the transaction under the immediate influence of the acts constituting the offense, and which as a natural result provoked them. As such they were not only material, but competent, evidence tending to establish the fact that the boy was then laboring under fear induced by the alleged threats. Moreover, what the prosecuting witness said to both his father and Condron was, in effect, nothing more than a repetition of his testimony, namely, that defendant threatened him with prosecution and imprisonment in the state prison unless he made the payment demanded. While, as hereinbefore stated, the record fails to disclose even *prima facie* evidence of the existence of a conspiracy, nevertheless, in so far as the evidence admitted was prejudicial to the substantial rights of the defendant, it was competent and proper as part of the *res gestae* in establishing that at the time and immediately following the making of the threats he was laboring under fear induced by such threats.

Appellant insists that his substantial rights were prejudiced by gross misconduct of the district attorney in his argument of the case to the jury. The contention is based upon the fact that in discussing the comparative personalities of

defendant and Da Rosa, the district attorney, after picturing
the latter as a weak, crippled boy, frightened and crying
after a night spent in jail, and the defendant as an astute
lawyer of experience, said: "Now, the defendant certainly
must be experienced in this class of shakedown, as the phrase
goes.  He knows to a nicety just how far he can go," and
after an objection interposed by defendant, continued: "I
tell you, gentlemen, there is a proper, sound, logical infer-
ence from Beggs' conduct to say he must be experienced in
this class of shakedown."   In his statements the district at-
torney did not assert as a fact that defendant had committed
like offenses with that for which he was being tried, but did
claim that from the manner in which he dealt with Da Rosa
it was a fair inference deducible from his conduct that he
was experienced in collecting money by similar methods
designated as a "shakedown."  The manner in which a
crime is committed, such as the opening of a safe or forgery
of another's signature, may indicate a degree of skill from
which experience in such line of work may be fairly inferred.
In our opinion, the circumstances were such that it cannot
be said the language used transgressed the rules of legitimate
argument which the district attorney had the right to make.
However this may be, we must assume that the jury recog-
nized its oath-bound duty and followed the instruction of
the court wherein it was said: "The court has had occasion
several times during this trial to instruct you as to what is
to be taken into consideration by you in determining this
case. . . . In order that there may be no misunderstanding
upon this point, the court again instructs you that statements
and declarations made either on behalf of the prosecution
. . . or counsel for the defendant, and not made as witnesses
under oath, are not evidence and are not to be taken or con-
sidered as evidence either for or against the defendant . . . ,
statements in argument not supported by the evidence . . .
are not evidence and should be disregarded by you."

Further misconduct is predicated upon the fact that in the
course of his argument the district attorney, in referring to
restrictions imposed by law upon the people's right to have
alleged errors, as compared with that of defendant, reviewed
on appeal, said: "The law is such that if the defendant pro-
poses an instruction that is the law, and that the judge does
not give, it is reversible error, and the case comes back for

retrial; on the other hand, the district attorney has no appeal. The defense can do anything in this courtroom and I cannot object beyond what I say in the courtroom here. I cannot go to another court, and in exchanges between Mr. Sex and myself he can say anything here, and I have no protection other than what I get at the hands of Judge Griffin on the bench.'' The statement was highly improper. In effect, it was calculated to induce the jury to place a lighter estimate on their duties than they would otherwise have done. The right, or want thereof, in either party to appeal, or extent of review granted by law to either party on appeal, is not a subject for consideration by a jury in reaching its verdict. (*McDonald* v. *People*, 126 Ill. 150, [9 Am. St. Rep. 547, 18 N. E. 817]; *Brazell* v. *State*, 33 Tex. Cr. 333, [26 S. W. 723].) Nevertheless, in view of the instruction given, it cannot be said that defendant was prejudiced by reason thereof. Moreover, the statement so made was not properly assigned as misconduct, nor any request made that the court instruct the jury to disregard it, without which the possibility of injury resulting to defendant cannot be considered on appeal. (*People* v. *Walker*, 15 Cal. App. 400, [114 Pac. 1009]; *People* v. *Mancuso*, 23 Cal. App. 146, [137 Pac. 278]; *State* v. *Biggerstaff*, 17 Mont. 510, [43 Pac. 709].)

There is no merit in appellant's contention that the court erred in denying his peremptory challenges to prospective jurors. (*People* v. *Schafer*, 161 Cal. 573, [119 Pac. 920]; *People* v. *Ochoa*, 142 Cal. 268, [75 Pac. 847]; *People* v. *Martinez*, 31 Cal. App. 413, [160 Pac. 868].)

The ruling of the court in denying defendant's motion for a change of venue upon the ground that a fair and impartial trial could not be had in the county is fully supported by what is said in *People* v. *Kromphold*, 172 Cal. 512, [157 Pac. 599], where the discussion was addressed to a like motion made upon similar grounds in support of which, however, there was an absence of the sharp conflict in evidence disclosed by the record in the instant case.

In the light of defendant's lengthy briefs and oral argument, we have examined the voluminous record with care. We find no error therein which, in our opinion, can be said to have been prejudicial to the substantial rights of defendant, or by reason whereof he was deprived of a fair and impartial trial by a jury whose reluctance in finding him

guilty is shown by the fact that they incorporated in their verdict a recommendation to the mercy of the court.

The judgment and order are affirmed.

Wilbur, J., Sloss, J., Melvin, J., and Angellotti, C. J., concurred.

Rehearing denied.