PEOPLE, PLAINTIFF AND APPELLEE, *v.* ARROCHO ET AL., DEFENDANTS AND APPELLANTS.

APPEALS from the Second District Court of San Juan in Prosecutions for Murder in the First Degree.

Nos. 2287 and 2290.—Decided August 2, 1924.

FAIR AND IMPARTIAL TRIAL—RIGHTS OF ACCUSED—DISCRETION OF COURT.—Justice demands, and it is the general rule, that a person accused of crime be given a reasonable time to prepare his defense; for if the rule were otherwise, the right of the accused to a fair and impartial trial would be often overthrown. Of course, the rule is the same when counsel for the accused is

appointed by the court, and he has no obligation to make any showing as to witnesses and what is expected to be proved by them. What is a reasonable time is generally a question within the discretion of the court, and the exercise of its discretion is reviewable on appeal. Examining the circumstances attending these cases in the light of the said rules, it was *Held:* That the district court abused its discretion in denying a continuance, and new trials were ordered.

The facts are stated in the opinion.

*Messrs. L. Muñoz Morales* and *J. de J. Tizol* for the appellants.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

On July 18, 1924, these two appeals were heard. They were argued by the attorneys for the defendants and the *fiscal.* Following the established practice, after a brief conference the records were passed to one of the justices for study and submission of memorandums. The memorandums were submitted and a lengthy and ardent discussion took place among the members of the court, diverse opinions being expressed concerning the various questions involved and the manner in which they should be decided. On one point all were agreed not only at the commencement of the final discussion, but from the time of the hearing, *i. e,* that the cases had been tried with unusual celerity. Finally, when there was no time left for writing an opinion, four of the justices agreed that the judgments should be reversed and a new trial ordered, whereupon the judgments were rendered and filed and the Chief Justice was designated to prepare the opinion of the court with the least possible delay.

Carlos Arrocho and Jacinto Clemente were indicted for having raped and murdered the girl Guillermina Rodríguez on the 20th of February, 1924.

At the beginning of the trial the following took place:

"Attorney Tizol: I dislike to trouble the court, but I want to object to the date of holding the trial and submit the following

motion: Now come the defendants in the above-entitled case, by their respective attorneys, and respectifully allege: That notwithstanding the objections of the undersigned attorneys the trial of this case was set for today, the 18th of March, leaving only an interval of six days from the 11th, the day on which the defendants pleaded to the indictment. That considering the large number of government witnesses listed in the indictment, the short period of time that the attorneys have had for investigating concerning the evidence for the prosecution and the manifest hostility with which they have met in all of their investigations, it has been impossible to prepare the defense in this case so as to safeguard the substantial rights of the defendants. Therefore, we move the court to postpone the holding of this trial so that there may be time sufficient to enable us to secure fully the rights of the defendants in this case involving the most serious charge under our Penal Code.

"While this motion was being argued the court reminded attorney Tizol that he should be brief in his argument because this question had been raised previously and submitted to the court which had considered all of the reasons for and against it. The attorney protested on the ground that the crime charged was a felony and the court should be as liberal as possible.

"The district attorney opposed the consideration of the motion on the ground that the question had been discussed and decided by the court and also because it should have been raised at another time instead of at the commencement of the trial.

"The court overruled the motion for a continuance and the defendants took an exception, saying that they wished to state their reasons therefor. The court ruled that this was not necessary, for it was sufficient that the exception should appear on the record, and the defendants took an exception to this ruling."

Thereupon Arrocho moved to be tried separately and the court granted the motion.

The impaneling of the jury was proceeded with and—

"While the challenges were being made the defendant challenged Manuel Colón on the ground that he had formed an opinion of the case. The court overruled the challenge for the reason that on being questioned by the court the said juror stated that he had not formed a fixed opinion of the case and could render a fair and impartial verdict in accordance with the evidence. The defendant excepted to the ruling of the court.

"The same question was raised concerning juror Francisco Lavandero. The court overruled the challenge on the same ground and the defendant took an exception.

"The same occurred with regard to juror Augusto Bubonis. The court overruled the challenge on the same ground and the defendant took an exception.

"A similar question was raised concerning juror Manuel Román. The court overruled the challenge on the same ground and the defendant took an exception."

After the evidence was heard the jury found the defendant guilty and on March 28th the court sentenced him to death.

On the following day Clemente was brought to trial and the following took place:

"Defendant: Reserving the right to reproduce this in writing and asking the court to pardon my insistence, I move again for a continuance of the case in behalf of the accused. Now comes the defendant in this case and by his attorney respectfully shows to the court: That in this case Carlos Arrocho and Jacinto Clemente were simultaneously charged with the crime of murder in the first degree. That when the case was called for trial yesterday the attorney for Carlos Arrocho moved for a separate trial, which I could not oppose because it is a ministerial right. The trial was held yesterday and the jury brought in a verdict. For this reason I am of the opinion that in addition to the reason already given for a continuance of the case there are other new reasons which compel me to urge the court to grant the continuance. The reasons are the following: For this trial of Jacinto Clemente and Carlos Arrocho a certain number of jurors were summoned, eighty of whom appeared yesterday before the commencement of Arrocho's trial. When the jury who were to try Arrocho had been impaneled the judge ordered that the other jurors should remain here all day and wait for the termination of Arrocho's trial so that they could form part of the jury who were to try Clemente. For this reason the court will comprehend that most of the jurors who are to try Clemente have been present at Arrocho's trial and have had an opportunity to hear the evidence in that case, which is absolutely interwoven with that to be offered in Clemente's case. The presence of these jurors in the court-room and the interest that this case has aroused in the community make me believe, with due respect, that the verdict

rendered last night is known generally and particularly by the remaining jurors, and that that verdict undoubtedly will have great influence against the substantial rights of the defendant. I understand that as this court is holding a regular term, the continuance of this case would not interrupt the said term, for there is, another case set for today. I also believe that as the charge is such a serious one the court should recognize the defendant's right to be tried not only beyond the pressure of public opinion, but also beyond the legal impression that may exist in the minds of these jurors if the trial be held immediately after that of Arrocho, in which a verdict has been found which is known to everybody. Besides, it is my impression that the district attorney intends to surprise us by calling witnesses who are not in the list of the witnesses that appeared before the grand jury and whose testimony the defendant has had no time to prepare to rebut. In case they are called I move for a continuance, not only on the grounds stated, but also so that I may have time sufficient to rebut the testimony of Pedro Rodríguez, in case he is called, for he did not testify before the grand jury.

"Judge: The court wishes to go on record to the effect that after the jury was impaneled the court excused all of the other jurors until today at 9 a. m. The court did not order them to wait for the termination of the first case, but excused them until today.

"Defendant: It is quite possible that owing to the confusion here yesterday something may have been forgotten. I am sure that they were not excused until last night.

"Judge: I am sure that they were excused in the morning until today. I would like to hear the district attorney.

"District Attorney: I object to the continuance of the case of Jacinto Clemente, in the first place because the motion is devoid of merit, for there are no reasons for a continuance. First, because the trial of Jacinto Clemente and Carlos Arrocho was set to be held jointly yesterday. On motion by one of the defendants the trials were separated and Arrocho's attorney moved that his case be tried first. The court so ordered, stating that the other defendant would be tried immediately thereafter. My point is that both cases were set for yesterday and would have been tried but for that motion. But the motion for separate trials, to which in my opinion the defendant was entitled, divided the case and the first part was tried, being Arrocho's trial, the trial of Jacinto Clemente to be held immediately thereafter. As to the question that the jurors who were summoned for the trial of the combined case were not excused by the court until after all of the evidence had been examined, it has

no basis because as soon as the jury was impaneled in Arrocho's case
the court excused the other jurors until today at 9 a. m. Within
the general knowledge of the court the jurors who did not try Arro-
cho were not present in the court-room because they had been ex-
cused until to'day. As to the allegation that the verdict rendered in
Arrocho's case might have some influence on the jury for the reason
that in the opinion of the defendant it is known by the jury, that
verdict will be known not only by the jury but by the whole country.
As soon as it is published, if the jurors have some reason to know
it today they will have much more reason to know it hereafter, be-
cause the news will have spread more as time passes. Not only the
San Juan jurors but those of the rest of the Island will know about
it. With regard to the belief that I intend to offer certain evidence,
the court should not take this matter into consideration because it
is an anticipation that my colleague has no reason to indulge. I
may or may not offer that evidence. It is an anticipation that gives
the court no ground to grant the continuance. Therefore, I am of
the opinion that this case is correctly set for today, according to
law, and that there is no legal reason for postponing it until an-
other day.

"Judge: The court overrules the motion.

"Defendant: I take an exception."

When the district attorney called witness Arturo Rodrí-
guez the defendant insisted on a continuance as follows:

"Defendant: Your Honor: At the beginning of this trial I
made a motion for its continuance and among other reasons there-
for I expressed my belief that the district attorney intended to
offer evidence not included in the list of witnesses who testified be-
fore the grand jury; that it was surprise to me and that I needed
time sufficient to prepare to controvert it. I was ironically criti-
cized by my colleague, but it seems that my fancy has become a
fact. We are confronted in a case of murder in the first degree
with testimony of this kind, which is offered as a surprise to this
party without being included in the list of witnesses, the defendant
having no opportunity to defend against it and to ascertain whether
it is true or not. I submit the matter to your Honor and repeat my
motion for a continuance.

"Judge: The court had an opportunity to consider this matter
and concludes that there are no grounds for modifying its ruling
that this witness be heard.

"Defendant: I submit to the court, as an attorney, that as the

witness is not included in the list of the grand jury and as the defendant was not given an opportunity to know and controvert that evidence, I am placed in a position where I am defenseless, a fact which the court should consider and advise the jury to consider, so that the jury may know that this witness is not included in the list of witnesses. Under these circumstances I will commence my cross-examination of this witness.''

Concerning challenges for cause the record shows the following:

''While the challenges were being made the defendant challenged Guillermo Morales for cause on the ground that a juror who states that he has formed an opinion and would require evidence to alter it should be excused. The court overruled the said challenge because upon being questioned by the court the said juror stated that he had not formed a fixed opinion such as would prevent him from acting with serenity and impartiality, performing his duty and giving a verdict in accordance with the evidence. The defendant took exception to the ruling of the court.

''A similar question was raised concerning juror Enrique Ubarri Casal, the defendant being of the opinion that the said juror was present at the trial of Carlos Arrocho, had heard the testimony of the physician and of the girl's father and would require evidence to change his opinion. The court overruled the said challenge, as upon being questioned whether the fact that he had heard the testimony had brought some prejudice to his mind so as to prevent him from giving an absolutory verdict if the evidence was insufficient, the juror replied that it did not. The defendant took exception to the ruling of the court.

''The same question was raised concerning juror Víctor Rengel, the defendant being of the opinion that he had been present the day before hearing the testimony of certain witnesses and that this may have influenced his mind in some manner. The court overruled the said challenge, inasmuch as the juror declared that he had formed no opinion of the case and that he could render a fair and· impartial verdict in accordance with the evidence. The defendant took exception to the ruling of the court.

''Juror Lavandero was challenged for cause on the ground that he had formed an opinion which only evidence would change. The court overruled the challenge because the juror stated that such opinion had no weight in his mind. The defendant took exception.''

The evidence was examined and the defendant was found guilty by the jury and later sentenced to death by the court.

Both judgments were appealed from and several errors were assigned, of which we shall examine only those regarding the continuance of the trial and the challenges of the jurors for cause, as they show that the defendants were not given the fair and impartial trial to which they were entitled under the law.

In arguing the first assignment the district attorney cited the case of *People* v. *Fredericks,* 106 Cal. 554. The facts of that case may be summed up as follows: In the morning of March 23, 1894, during business hours, William M. Fredericks, in attempting to rob a savings bank in the city of San Francisco, killed the cashier. Fredericks escaped but was captured a few hours later. On March 28th the preliminary examination was made; on March 29th the indictment was filed, and on March 30th he was arraigned and allowed until April 2nd to plead to the indictment. On that date, the accused having refused to plead, a plea of not guilty was entered in his behalf and the case was set for trial and tried on April 5th, nothwithstanding repeated motions for a continuance made by the defendant.

The district attorney contends that that case is stronger than the cases under consideration and that notwithstanding this the Supreme Court of California held that "we do not think the mere fact of fixing the day of the trial at a time so soon after the arraignment and plea, *ipso facto* furnishes sufficient ground for a reversal of the judgment."

It is true that the Supreme Court reached the foregoing conclusion, but let us consider the language used by it:

"While the period of time, to wit, three days intervening· between the arraignment and the commencement of the trial of the defendant, might be ample time in some European countries to bring to trial, convict, and decapitate half a dozen criminals, yet in this country, where judicial tribunals are organized upon a different system, and where persons charged with crime have more rights

under the law, we think this defendant might well have been allowed ten, twenty, or even thirty days to prepare for his defense. In view of the enormity of the charge against him; in view of the public clamor that was pursuing him; in view of his own poverty and friendlessness, the state could well have afforded to concede him such a continuance, in order that he might have full opportunity to make his defense, however weak it may have been when made. The state would have lost nothing by such a course, and justice would have been done just the same. While the state should administer justice to law-breakers with no laggard hand, yet, at the instance of public clamor or other causes, it is beneath its dignity to act with unseemly haste." *People* v. *Fredericks, supra.*

That the policy adopted by the Supreme Court of California in merely criticizing without reversing has not brought about the desired result, becomes evident at least in this case in which the decision is invoked to support procedure similar to that criticized.

As to whether the case is stronger, we will say that it is if the fact is considered that three days were allowed there while in this case six and seven days were allowed; but the circumstances of the crime make these cases stronger than the California case, for in that case it was committed in a bank during office hours and in the presence of witnesses.

In the chapter treating of rights of the accused Ruling Case Law sums up the jurisprudence as follows:

"Justice requires and it is the rule that a person charged with a crime should have a reasonable time to prepare his defense; for if the rule were otherwise, the defendant's right to a fair and impartial trial would often be nullified. Of course the rule is the same when defendant's counsel are appointed by the court, and this without being forced to a showing as to witnesses, and what is expected to be proven by them. What is a reasonable time is generally a question for the discretion of the court, and the exercise of its discretion is reviewable upon appeal." 8 R.C.L. 67.

The text of Ruling Case Law is supported by many decisions, but we shall cite at length only that of the Supreme Court of Louisiana in the case of *State* v. *Collins,* 104 La.

629; 81 A. S. R. 150. Mr. Justice Blanchard, speaking for the court, expressed himself as follows:

"While the zeal displayed by our learned brother of the district court in the prompt vindication and enforcement of the law merits commendation, we are yet constrained to hold that, in this instance, he carried it a little too far. We differ from him in his ruling denying the continuance sought.

"This was a capital case. The life of a human being was at stake and for the time being it was sheltered by the presumption of innocence. Great deliberation—an utter absence of precipitancy—should have characterized every movement of the court leading up to the conviction. 'The law travels with a leaden heel, but strikes with an iron hand,' is the maxim pregnant with obvious meaning. In this instance it doffed the leaden heel, yet struck with the iron hand.

"It is not unlikely that the previous attaempt at lynching and the apprehension felt by the officers of the law of a second attempt being made in case of delay in bringing the accused to trial, may have influenced the situation to his detriment and caused the undue haste complained of.

"But this cannot be accorded the weight of justifying departure from the rule of calm deliberation. The right 'to have the assistance of counsel' is one conferred by the constitution itself. Reasonable time to prepare for his defense should have been allowed the counsel, who had by direction of the court undertaken its responsibility. Only in this way could their 'assistance' be made effective. Theirs was a task to be discharged without recompense. They had other duties to perform in connection with the court, growing out of employment in other cases bringing them professional fees. It was not to be expected they would lay these aside and devote themselves solely to preparation for the defense of the instant case which brought them no reward. It does not seem to us that time enough was allowed for both.

"In State v. Simpson, 38 La. Ann. 23, which was a murder trial, the indictment was returned into court on the 5th of October. The accused was arraigned and counsel assigned her the same day, and the case fixed for trial on the 9th of the same month. On that day the counsel asked a continuance, on the ground that he had been assigned as counsel only four days before, and had not had time to prepare to try the case because occupied with a mass of other business. He stated he believed there was a valid defense

and that a reasonable time should be given to prepare it. He made affidavit himself to the averment of his motion. The continuance was refused. This court on appeal held it was error, and reversed the verdict and sentence. In doing so this language was used: 'Considering that the offense charged was murder, that the indictment had only been filed at the same term of court, that the counsel assigned for the defense was a nonresident of the parish where the court was held, and had no sufficient opportunity to confer with the witnesses, and that the defense to be made required great research of authorities on a question of much difficulty and intricacy, we think the judge a quo erred in overruling the motion.'

"Further along in its opinion the court, speaking of the constitutional guaranty to persons charged with crime of the right to be heard by counsel, said: 'It would be a barren right if the counsel were not allowed a reasonable time to prepare for the defense, time to investigate the facts and to examine the law applicable to the case.' And concluding its opinion the court said: 'A review of the entire record satisfies us that the prosecution was characterized by undue haste scarcely compatible with the guaranty of a fair and impartial trial.'

"It is true in that case it was the counsel himself who swore to the inadequacy of the time which had been at his disposal to prepare for the defense. Here, the motion for continuance on the same ground was prepared and signed by the counsel appointed to the prisoner, but it was the latter who made the affidavit to the truth of its averments. The attorney should have made this affidavit and it was error not to have done so, but, under the circumstances of this case, we are constrained to hold that it is not sufficiently grave to warrant sustaining this verdict on that ground alone.

"In State v. Brooks, 39 La. Ann. 241, 1 South. 421, the homicide was committed on September 29th. The accused was indicted and arraigned on the 4th of October following, and his trial fixed for the 9th—five days later. Definite arrangements for counsel to defend him were not made until the day before the one assigned for the trial. Application for continuance was made on the ground of lack of time to prepare the defense. It was refused. This court held it was error, laying stress upon the fact that it appeared the accused was convicted on the ninth day following the commission of the offense for which he was indicted, and that the application for continuance was made on the first calling of the case for trial.

"In State v. Deschamps, 41 La. Ann. 1051, 7 South. 133, this court reviewed the question at length and collated the authorities

bearing thereon. Application for continuance was there made under oath by counsel assigned to the accused. He had been appointed only forty-eight hours previous to the calling of the case for trial. He had had no sufficient time to prepare the defense. He asked the indulgence of the court for time to prepare it. It was refused. On appeal here, held reversible error: See also, State v. Boyd, 37 La. Ann. 781; State v. Horn, 34 La. Ann. 100.

"These authorities establish the rule *that counsel appointed to defend persons charged with crime should be allowed a reasonable time in which to prepare for trial, and this without being forced to a showing as to witnesses, and what is expected to be proven by them. Also that what is a reasonable time will not be left entirely to the discretion of the judge, but the same is reviewable here.*

"Under the circumstances of this case, the two or three days intervening between the assignment of counsel and the day of trial was not sufficient time in which to prepare to try a murder case. The case should have been allowed to go over at least to the second week of the term.

"'For the reasons assigned it is ordered, adjudged and decreed that the verdict and sentence be annulled, avoided, and reversed, and that the cause be remanded to the court a quo to be proceeded with according to law." *State* v. *Collins,* 81 Am. St. Rep. 152–4. (Italics ours.)

But there is more in these cases. We have transcribed the parts of the record concerning the challenges for cause. There was not included, as should have been, a literal transcript of the questions and answers. But the part transcribed was sufficient to convince one of the justices of the majority, Mr. Justice Hutchison, that the law applicable had been violated, and to create a doubt about this in the minds of the other justices, which, added to the defenseless position in which the defendants were left by the refusal to grant a continuance, definitely inclined the balance in favor of a reversal of the judgment and a new trial.

The *fiscal,* in arguing that the court did not err in overruling the challenges for cause, cites subdivision 7 of section 227 of the Code of Criminal Procedure and the cases of *People* v. *Roy Wolff,* 182 Cal. 728; *People* v. *Edwards,* 163

Cal. 752; *People* v. *Brown,* 148 Cal. 743; *People* v. *Walter Warner,* 147 Cal. 546, and *People* v. *Murphy,* 146 Cal. 502.

The facts in the cases cited have been considered and they present situations distinct from those of the cases now before the court. The law requires that the opinion formed by the talesman be based on public rumor, statements of the press or the notoriety of the case, and that the court be satisfied, upon this statement under oath or otherwise, that he is capable of acting with absolute impartiality and fairness in the matter to be submitted to him.

Here some of the jurors challenged in the second case formed their opinions upon hearing testimony given in the first case, and from the facts as stated it is doubtful that all of the jurors challenged in both cases came to try the defendants in such a state of mind and with such serenity of judgment as tradition, law and jurisprudence all require.

It seems proper to transcribe what Bishop says on this point. His opinion is very valuable in construing subdivision 7 of section 227 of our Code of Criminal Procedure:

"This is the most important of the disqualifications of the present chapter, the most delicate, and the one oftenest considered. It depends upon the unwritten law of England as existing when this country was settled, upon our constitutional guaranties of a jury trial, and upon the somewhat varying statutes and decisions of the several States, viewed in combination. And the result is that while the general principles harmonize, the minuter doctrines somewhat vary in our States.

"The Common Law Rule,—as existing when our country was settled, is, in the words of Hawkins, that the juror is disqualified who 'hath declared his opinion beforehand that the party is guilty, or will be hanged, or the like.'

"With us,—since this doctrine constituted a part of our original common law, our constitutions securing jury trial render its substance irreversible either by the legislatures or the courts.

"The reason of the doctrine, as thus laid down by Hawkins, appears in the foregoing explanations of this sub-title. The juror should be indifferent and without bias. And one is not such who has already formed and declared his opinion.

"Various judicial views, and something of the legislation in our several States, briefly appear in the note.

"The differences disclosed in the note are partly of statutory and partly of judicial origin. It will be helpful both in the interpretings of the statutes and in the searchings for the judicial path to consider that: The jurors are men, with the common imperfections of mankind. Absolute freedom from bias, perfect mental capability, a purified understanding that moves always with the evidence and never otherwise,—these and the rest which constitute the mental and moral make-up of a perfect being have no existence on our earth. The common law rule and our constitutions must be interpreted in the light of these facts; they are their surroundings. Therefore the disqualifications of bias, to prevail, must be of some standard magnitude dictated by practical wisdom. To seek an impossible jury, consisting of perfect men, would be simply to forbid the wheels of justice to move. Again, opinion is a variable thing. But a small part of the opinions of the best men come from reason and investigation. We begin life by accepting for truth, as of course, whatever others tell us; and we end life almost in the same way. Indeed, of necessity, so imperfect is man that he must proceed thus, or let his activities stop; for it is impossible any man should investigate things so rapidly as always to see before he moves. We read our morning papers, and though we know that their contents are a mixture of truth and error, we practically accept as truth whatever we see no special reason to controvert. If we read of crime stated to have been perpetrated by Mr. Jones, we have at once what may be called the 'opinion' that Mr. Jones did it. If afterward we see Mr. Jones's guilt denied, our minds lapse back into equilibrium. And in view of the law, which is a practical thing, no juror has in reason a disqualifying opinion unless he adheres to it after the denial comes. The opinion which does not thus adhere should not be called such within the law we are considering. As to rumor, he who thus forms the adhering opinion from it is, in just doctrine, more palpably unfit to sit as a juror in the case than is he who derives it from the evidence; for no just and capable man will act thus. And still, by the opinion from rumor, which a large part of our cases say does not disqualify, is perhaps often meant the hypothetical assumption that the defendant is guilty if the facts embodied in the rumor are true; and this sort of hypothetical bias, though not to be commended, should probably not exclude the juror who for the purposes of the trial will cast aside the bias. Yet no one who, after the denial, and the issue made,

clings to his prior opinion, whatever its source, that the prisoner is guilty, should be put upon the jury to try him. Nor should such juror's belief that he can render an impartial verdict, solely upon the evidence, alter the case. A man may believe an untruth of himself, as well as of anything else; and it is not in human nature for one who has made up his mind, especially from rumor, to try the question *de novo* and impartially, like one who has not. And this reasoning applies as well to the unexpressed opinion as to the expressed.'' II Bishop's New Criminal Procedure, 100–14.

Such, briefly stated, were the grounds on which the majority of this court based the judgments of the 2nd of August.

On many occasions there is in our country justified clamor against delay in the administration of justice, both in criminal and in civil cases. This court has been constrained to dismiss many prosecutions because the defendants were not tried within 120 days. In no manner should our attitude be interpreted as favoring such delay. On the contrary, we insist and shall always insists that the judges and district attorneys comply with their duties to the limit and that the proceedings be had as speedily as possible. But such speed should be compatible with the rights involved. The grandeur of our institutions consists in that both law and practice recognize the rights of the most humble.

The court appointed counsel for the defendants in these cases. The court imposed upon them an extraordinary duty. They accepted the responsibility, but insistently asked for time in which to comply with their obligations. Why such haste? How would the cause of justice have suffered by inquiring of counsel how much time was needed and, if reasonable, by allowing it? The serenity and firmness peculiar to the courts should not be disturbed however horrible the crime charged and however excited public opinion may be. The presumption of innocence accompanies the accused. The court's doors should be open to him without prejudice in any sense. There are at stake not only the rights of the defendant, but also those of the whole society. A bad precedent; a tolerated violation, would tend to destroy the product of

centuries of work.   The machinery of the government is powerful, for it has every facility at its command.   When this machinery is confronted by a man accused of a crime it is the duty of the court to see that the judicial combat be commenced, conducted and decided as far as possible without pressure; without advantage; without inequalities, and with absolute justice to both parties.

We can not resist calling attention to the attitude of the district attorney at the beginning of the second trial in connection with the testimony of Arturo Rodríguez.   When a witness has not been examined by the grand jury it is not necessary that his name should be included in the indictment, but the statute providing for the inclusion therein of the names of all witnesses known at the time it is prepared indicates what is the spirit of the law, and the action of the district attorney in this case was clearly contrary to that spirit.

If the defendants are guilty; if they committed the atrocious crime with which they are charged, let them be convicted and suffer the death penalty if proper; but they should be tried with all of the guaranties which fortunately are recognized in this country, not as a mere fiction of law, but as a fact in practice.

*Reversed and remanded for new trial.*

Justices Aldrey, Hutchison and Franco Soto concurred.
Mr. Justice Wolf dissented.

### DISSENTING OPINION OF MR. JUSTICE WOLF.

As the court points out, there is a presumption of innocence in favor of every defendant.   Section 236 of the Code of Criminal Procedure provides as follows:

"Sec. 236.—A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal."

The body of men that, under our system, has the duty of saying when the presumption of innocence is overcome, is the jury. The jury is the sole judge of this fact. While a court may determine whether there is enough evidence to go to a jury and may set aside a verdict of the jury, nevertheless it is always a jury that must respond to the facts in a case. When that body has spoken against a defendant, the presumption of innocence is entirely destroyed. Another presumption then arises in the case. It is a presumption of guilt. 16 Corpus Juris, 536; 17 Corpus Juris, 213.

When a case enters the portals of an appellate court, it enters with a presumption of guilt against the defendant. Emphasis should be laid upon the fact that an appellate court does not really try a case. In Porto Rico it is the district court that does so. The battle of a person to retain his life or his liberty must be made there. Therefore the law has wisely given defendant his presumption of innocence in opposition to the forces that a prosecution will bring to bear upon him. Therefore the defendant on one side and organized society on the other expectantly await the verdict of the jury. It has been said that the whole science of government is to get twelve good men and true into the jury box. After a jury has rendered its verdict and the district court has pronounced judgment, the duty that devolves upon the appellate court is not to try the case, but to determine whether the court below has committed errors. And for the purposes of an appeal in Porto Rico an abuse of discretion must also be considered an error.

Error, however, must be shown. Abuses of discretion must be demonstrated. No court has a right to reverse a case merely because it has a doubt. A court, to reverse, should be convinced of error. The following paragraph appears in the majority opinion:

"But there is something more to be considered in these cases. We have transcribed what the record shows about the challenges for cause. The record does not contain, as it should, a literal copy

of the questions and answers. But the transcript was sufficient to convince Mr. Justice Hutchison, one of the justices forming the majority, that the law had been violated in the matter, and to create doubts in the minds of the others in the same sense (*y para hacer dudar a los otros en el mismo sentido*), a fact which, added to the defenseless position in which the defendants were left by not having been granted a continuance, positively inclined the scales for a reversal of the judgment and the granting of a new trial."

The inference from this part of the opinion is that the whole court would not have voted for a reversal had these doubts not existed. However, before discussing the alleged errors on which this case has been reversed I desire to enter into or amplify some general considerations.

In the course of a trial many matters are presented to the judge which involve the use of a discretion. In its generic sense the word "discretion" is used when the judge rules on matter of law or admits or excludes evidence. There are matters, however, like postponements, the order of witnesses, the length of examination, the limits of cross-examination, and other questions wherein is involved no ruling on a matter of law strictly so called. Within this field the trial judge has a very great latitude and he will only be reversed for an abuse of discretion. It has long been recognized that the phrase "abuse of discretion" is not a happy designation, but it has a definite meaning in our procedure. It does mean, however, in a criminal trial such a use of discretion as would result in an injustice to a defendant. On appeal, such injustice, like an error of law, must clearly appear.

The party alleging error should clearly show it. *Bear Lake Irrigation Co.* v. *Garland,* 164 U. S. 24; *Reynolds* v. *United States,* 98 U. S. 145; *Spies* v. *Illinois,* 123 U. S. 179; 16 R. C. L. 289, Notes 4 and 5; *People* v. *Maughs,* 8 Cal. App. 112; *People* v. *Ruef,* 114 Pac. 61; 4 Corpus Juris, 733, 798, 811.

"In Reynolds v. United States, 98 U.S. 145, 25 L. ed. 244, where the Supreme Court of the United States declined to disturb the

ruling of the trial court in overruling a challenge to jurors, it was said: 'The theory of the law is that a juror who has formed an opinion cannot be impartial. Every opinion which he may entertain need not necessarily have that effect. In these days of newspaper enterprise and universal education, every case of public interest is, almost as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely anyone can be found, among those best fitted for jurors, who has not read or heard of it, and who has not some impression or some opinion in respect to its merits. It is clear, therefore, that upon the trial of the issue of fact raised by a challenge for such cause, the court will practically be called upon to determine whether the nature and strength of the opinion formed are such as, in law, necessarily raise the presumption of partiality. The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are concerned, like any other issue of that character, upon the evidence. The finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless the error is manifest. No less stringent rules should be applied by the reviewing court in such a case than those which govern in the consideration of motions for new trial because the verdict is against the evidence. It must be made clearly to appear that, upon the evidence, the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the "conscience or discretion" of the court.' Quoted in part in Spies v. Illinois, 123 U.S. 131, 31 L. ed. 80, 8 Sup. Ct. Rep. 21, 22, also in Callot v. United States, 31 C.C.A. 44, 58 U. S. App. 243, 87 Fed. 446; Leigh v. Territory, 10 Ariz. 129, 85 Pac. 948, and in Hardin v. State, 60 Ark. 53, 48 S. W. 904." *Scribner* v. *State,* 35 L.R.A. (N.S.) 1015, which may also be examined on the general subject of opinions gained from newspapers.

An interesting citation of *Reynolds* v. *United States, supra,* is to be found in *Jarvis* v. *State,* 34 So. Rep. 1031:

"This principle is stated by our own court in this language: 'The sufficiency of the cause of challenge is determined by the trial court, and the inquiries are addressed to the conscience of the juror under oath. He is examined, touching his qualifications, in the presence of the judge, who sees his manner of answering the questions, and the probing of his conscience, which is oftentimes more

clearly indicative of his disinterestedness or bias than the mere words used. The reviewing court, therefore, should exercise caution, and the finding of the trial court should not be set aside, unless it affirmatively appears that on the answers of the juror, taken as a whole, he entertained a fixed opinion which would bias his verdict.' Long v. State, supra. See, also, 1 Thompson on Trials, par. 118, p. 126, and note 5. Applying these principles, we are constrained to hold that Cook's incompetency is not shown by the record.''

If the record in this case be examined it will be seen that the court, in refusing to admit challenges for cause, said as follows:

''When the challenges were being made the defense challenged Manuel Colón for cause on the ground that he had formed an opinion in the case. The Court refused to allow the said challenge since, in answer to questions put by the Court, said juror stated that he had not reached a deeply rooted and irrevocable opinion of the case and that he was prepared to render a just and impartial verdict according to the evidence introduced.''

This statement was typical of all the challenges for cause, as may be seen in the majority opinion. Does this show partiality in the juror? Does this show it was impossible for any of the particular jurors challenged in this case to render an impartial verdict? The answer would seem evident.

The judge below, as the record showed, examined the jurors and adjudged the jurors to be in a proper state of mind to render an impartial verdict. If there was any doubt about the said impartiality it was the duty of the appellant to show to this court that the juror was in fact prejudiced. The intimation of this court, if anything, in the paragraph cited, is that the burden was on the Government to have brought up the whole record. No such duty exists on the part of the Government. The duty of showing error devolves on the appellant. If there was anything in the rest of the record not transcribed, the appellant should have made it appear what it was the juror said that showed an ineradicable prejudice or something else which would disqualify him. If a showing had been made that the juror was in such a state of mind on

entering the jury box that there was a presumption of fact
against his rendering a fair and impartial verdict, that ought
to have caused the judge below to excuse him, but in accept-
ing him the judge was exercising a judicial discretion.   Curi-
ously enough, in this case the *fiscal* of this court offered in
regard to one of the jurymen the whole facts in regard to
the juror's examination.   This excerpt we had no right to
consider, because it was not properly part of the record.
This excerpt tended to show that there was even less objec-
tion to the juror than might be expected.   I rely on this ex-
cerpt in no way except to bolster up the presumption that
always exists that if the ruling of the judge in exercising a
matter of discretion is at all doubtful the burden is on the
appellant to show an abuse of discretion.   Any silence mili-
tates in favor of the action of the judge.   To reverse, the
record should have excluded the possibility that appeared in
the excerpt.

Section 227 of our Code of Criminal Procedure prescribes
the causes for which a juror may be challenged on the ground
of implied bias, and paragraph 7 of that section provides as
follows:

"Sec. 227.— . . . .

"7.—No person shall be disqualified as a juror by reason of
having formed or expressed an opinion upon the matter or cause
to be submitted to such jury, founded upon public rumor, statement
in public journals, or common notoriety: *Provided,* It appear to
the court, upon his declaration under oath or otherwise, that he can
and will, notwithstanding such an opinion, act impartially and
fairly upon the matters to be submitted to him.   The challenge may
be oral, but must be entered in the minutes of the court."

This provision seems to have been copied literally from
California and a similar provision prevails in a number of
States and territories.   In *Turner* v. *State,* 4 Okla. Crim.,
111 Pac. 988, it was held that a similar statute did not in any
degree change the essential qualifications which jurors must
possess and merely furnished a test by which the qualifica-

tions were to be determined. What I understand this to mean, and I think the authorities will bear me out, is that such a statute does not change the general rule as laid down by the Supreme Court of the United States as to when a juror is to be considered biased and when not. *People* v. *Riggins,* 159 Cal. 118, reviews some of the authorities from California as follows:

"In *People* v. *Wells,* 100 Cal. 229 (34 Pac. 718), a juror had an opinion on the merits of the case, and it was founded upon what he had been told by those who seemed to know the facts that had been related to him, but he stated that, notwithstanding that opinion, he could and would act fairly and impartially in the case. The court held that he was incompetent, saying: 'At common law a juror who entered the box with an opinion as to the guilt or innocence of the accused was *ipso facto* disqualified from acting in the case, but section 1076 of the Penal Code of this state creates an innovation upon this principle and declares an exception to the common-law rule. But in order that a juror disqualified at common law, by reason of having previously formed an opinion as to the guilt or innocence of the accused, may come within the provisions of the statute it must appear affirmatively to the court from the evidence before it that such opinion is formed from public rumors, or statements of public journals, or common notoriety; and it must further appear to the court by the juror's declaration under oath that, notwithstanding such opinion, he can and will act fairly and impartially upon the matter to be submitted to him.' But the court proceeded to declare that where the opinion is founded upon statements from other sources than those above named, 'that fact of itself is a disqualification under the law, and it is a disqualification even though the juror should declare to the court under oath that, notwithstanding such opinion, he would and could act fairly and impartially upon the matter to be submitted to him.' In *People* v. *Miller,* 125 Cal. 46 (57 Pac. 771), the court says: 'The juror went into the box with an opinion that the defendant was guilty. Such condition of the juror's mind was an absolute disqualification at common law. Under the Penal Code of this state a single exception is declared in section 1076. The juror was clearly disqualified unless he came within the provisions of the aforesaid section.' This was said in view of the further fact that the juror had declared that he could and would act fairly and impartially and obey

the instructions of the court. In *People* v. *Helm,* 152 Cal. 536
(93 Pac. 101), the court in discussing this subject says: 'If it is
not made to appear that the juror's opinion is based entirely upon
one or all of the three sources of information above named; if it
is shown that his belief has its origin in any other source than one
of the three enumerated, he is at once as thoroughly disqualified
under our code as he would have been at common law.' ''

Then the court goes on to say in the *Riggins Case* as
follows:

''The principle established by these decisions is that the juror's
ability to disregard actual bias, shown to exist in his mind, is
wholly immaterial, save in a case which comes within the exception
specified in section 1076. The concurrence of both conditions being
necessary to the exception, the failure to bring the juror within it
is as clear where the opinion constituting the bias or prejudice is
not an opinion on the matter or cause to be submitted, as where,
although it is upon that matter or cause, it is not based solely upon
one or more of the sources of information named in the excepting
clause. If both conditions are not met, the juror is disqualified, and
no declaration by the juror that he can lay aside the prejudice and
act fairly and impartially, will remove the disqualification. Lom-
bardi v. California St. Ry. Co., 124 Cal. 316 (57 Pac. 66) ; Naylor
v. Metropolitan St. Ry. Co., 66 Kan. 407 (71 Pac. 835) ; Coughlin
v. People, 114 Ill., 165, 176 (33 N.E. 1, 19 L.R.A. 57).''

So that the opinion formed by a juryman which would
disqualify him beyond the possibility of cure must be one
formed outside of the exceptions enumerated in section 227
of the Code of Criminal Procedure, *supra.* I maintain, how-
ever, that from the general principles in favor of the cor-
rectness of the action of the court below, when the chal-
lenged jurors were not excused the presumption would be
that the kind of opinion that each or any of them had formed
was due to newspaper reports, common rumor or the like.
Nothing would show this better than the case of *People* v.
*Riggins,* where the actual bias of the juror was by reason of
the knowledge that he had of the trial of the defendant in a
former and different case and where the general impression
had been in California that he was unjustly acquitted.

In the *Riggins Case* the court said that upon the examina-
tion of a juror on his *voir dire* the question of whether or
not he had actual bias was one of fact to be determined by
the trial court upon the evidence before it; that when the
evidence was conflicting upon that question, as where the
juror gave contradictory answers, the decision of the trial
court thereon, as in any other case of conflicting evidence,
was conclusive upon the appellate courts, citing authorities.
Given the silence of the record in this case, it should have
been indisputably concluded from the statements of the court
that such a question had arisen and been resolved against the
challenge. *People* v. *López,* 159 Cal. 11, is another case *in
pari materia.* The court said:

"The statements of those called for jury duty in this case seem
quite typical of those given during the selection of a jury in any
case about which there has been extensive comment in the daily
journals. Almost every person called into the jury box had an
opinion of defendant's guilt, based upon what he had read, and
some of them stated that such opinion would require evidence for
its removal. When, however, they were put to the test of their
ability to try the case upon the evidence produced at the trial and
uninfluenced by other considerations, each answered that he could
and would, if chosen, act fairly and impartially. It was the func-
tion of the trial court to determine the true state of mind of each
member of the panel who was questioned touching his qualifications
to serve as a juror. Frequently there is conflict between different
portions of the testimony given during an examination on *voir
dire,* due not always to the lack of candor on the part of the per-
son examined but to his misunderstanding of the questions asked
and of the duties of a juror, until such duties are explained by the
court. When such conflict occurs the trial court must decide, if
possible, which of the answers most truly reveals the state of the
talesman's mind. In other words, the questions generally presented
are those of fact and not of law. People v. Ryan, 152 Cal. 364,
(92 Pac. 856); People v. Ochoa, 142 Cal. 274, (75 Pac. 847); Peo-
ple v. Flannelly, 128 Cal. 86, (60 Pac. 670); People v. Fredericks,
106 Cal. 559, (39 Pac. 944)."

The whole court in this case, on the assurance of counsel

at the hearing, accepted that the defendants' peremptory challenges were exhausted. Unquestionably, this fact should appear from the record. I am making no particular point on this failure, except to show why I am discussing the challenges for cause to such an extent, inasmuch as, if the challenges had not been exhausted, there would be no ground of error.

The transcribed portions of the examinations of the jurors did not show that if the said jurors had an opinion amounting to prejudice, whether the said opinion was in favor or against the defendant. This particular point I mention more because this court is apparently indicating that when a juror says he has formed an opinion he may be challenged by the defendant. The rule is that the juror must be biased against the person challenging him. So that the examination of the juror as described showed no bias against the defendant, but merely that he had formed an opinion in the case. Hence it was imperative that the record on appeal should have been more specific.

California holds in the *Riggins Case, supra,* that it is not enough to challenge a juror for cause, but the nature of the challenge must be specified. Likewise *People* v. *Cochran,* 61 Cal. 549. Nothing of that kind was apparently done in this case.

My object in singling out these defects in the record is because I think they are a partial revelation of the real truth of the case. In other words, all these defects in the record point almost inevitably to the fact that counsel had no real objections to the jurors as presented and were only doing their duty as they conceived it to the defendants by presenting objections. If any of these jurymen had been, in point of fact, actually biased, the distinguished counsel for the defendants would have found a way to make it appear in the record.

Another thing runs through nearly all the cases that discuss the formation of a jury, namely, that a showing should

ordinarily be made that the jury, as finally formed, was, in fact, prejudiced or biased; that some juryman sat in the box with a prejudice against the defendant. We have no knowledge or showing that any one of the challenged jurymen actually formed a part of the jury that tried Clemente or Arrocho.

The principal ground for reversal in this case, however, was that the defendant was hurried to his trial; that his counsel did not have due time to prepare his defence. It seems to me that no one will question that after issue joined, no time having been fixed by a statute, the moment for fixing the trial falls within the sound discretion of the trial court.

The statute in Porto Rico, however, leaves no doubt on the question. Section 182 of the Code of Criminal Procedure provides that "After his plea the defendant is entitled to at least five days to prepare for trial."

Any time granted by the trial court in excess of five days, therefore, is purely a matter of discretion, and abuse of this discretion should be clearly shown. Counsel for defendants in both the Clemente and Arrocho cases gave no special reasons for extending the time beyond the fact that there were numerous witnesses, that the time which counsel had been able to give was short and that their investigations had met with hostility. At no time, other than by such general assertion, did the defendants attempt to show that the nature of the defence was of such a character that more time was needed.

The court cites a number of cases from Louisiana. In the principal one it appeared that the court would have been satisfied if the trial had been postponed until the second week of the term. I have not verified whether the terms of court in Louisiana begin on a Monday or a Tuesday, but the plain inference from the court's decision is that if the case had been set for the Monday of the second week the Supreme Court of Louisiana would not have reversed for an abuse of discretion. In other words, from Monday to Monday is seven

days—exactly what took place in this case. Of course, if the term in Louisiana begins on a Tuesday, to postpone until the following Monday would only have been six days. So that the postponement of seven days that took place in this case would apparently have satisfied the Supreme Court of Louisiana. This court also justified its action by relying on what the Supreme Court of California said rather than what it did. The Supreme Court of California, while chiding the haste in that case, refused to reverse on the ground that a case was tried within four days. In other words, in spite of what it said it would appear that the Supreme Court of California was consciously or unconsciously following the rule, namely, that before the action of a trial court should be reversed the appellate court should be convinced that there was an abuse of discretion and that the record should show this fact.

After the rendition of the verdict the defendants moved for a new trial, and in this motion for a new trial, although one of the grounds for setting aside the verdict was that the defendants had not had ample time to prepare their defence, yet here again counsel failed to show any particular reasons why seven days were not enough to try the case. By that time, after all the witnesses had been heard, counsel should have been sufficiently advised of the nature of the defence to specify to the court some of the reasons why counsel had not had time before. One of the grounds assigned was that counsel, in view of their other occupations, did not have time. When counsel is assigned to defend a man on trial for his life he will generally give up almost everything else he has to do in order to defend his client and this is what it may be said the law would expect him to do. It is ordinarily what young counsel assigned to the case will do, and if older counsel do not need to give so much time, it is because their greater experience will enable them to arrive at conclusions more rapidly. Surely, the fact that distinguished counsel in this case were assigned to defend is no reason for giving

them more time than would have been given to younger counsel. They should need less time, if anything.

The foregoing considerations might lead one to wonder whether the dissenting judge is not insisting upon a technical interpretation of the law. An intelligent layman might perhaps wonder why these rules of law should play a role if the defendants did not in point of fact have time to prepare their defence. In what manner, then, is an appellate court to judge whether there has been undue haste in the trial of a case? We have no right to say that there has been such undue haste because the attorney for an appellant says so. As against such an assertion we have the unbiased opinion of the judge who sat in the case and who decided, after due consideration, that there was no reason to postpone the trial. I say "unbiased" because there is not the slightest suggestion in the record or in the briefs that the judge who tried the case was biased, even if one of the strongest presumptions of the law did not exist in his favor. The district judge who presides over a trial is in reality the person who in organized society has the most responsible position. His discretion is being invoked at almost every moment. The law presumes strongly, as I have indicated, that his rulings and judgment are right until the contrary fact is shown. Therefore, no amount of assurance or protest will aid an appellant unless the facts sustain him.

When a lawyer objects that a rule of law is technical he probably means that the rule is proper in most cases but is actually or seemingly working injustice in the particular case. Stripped of all the terminology of the law, of the ordinary habiliments of the law, the plain proposition to me is that in order to reverse the judgment the court ought to have been convinced that Arrocho and Clemente, in point of fact, did not have sufficient time to prepare their defence. That it might be better, as a rule, to give defendants a little more time should not affect the result. Why, indeed, except to escape a possible criticism, should a trial judge postpone a

case longer than is necessary to prepare a defence? When the court on March 11, 1924, set the case for the 18th, if by the 16th, for example, the counsel for defendants had come into court and even without making a full exposé had assured the court that they were investigating a certain phase of the question or were investigating the sanity of the defendant or the character or the veracity of some of the witnesses who testified before the grand jury, I personally have no doubt that the trial judge or almost any trial judge, especially if he had appointed counsel, would have granted further time.

When a court lays down a practice to be followed, a practice in this case superimposed and not required by the statute, one may say that ordinarily it is generally a practice to be followed in important cases. Nevertheless, there may be exceptions, and, as is generally shown, the time to be granted in excess of five days is within the sound discretion of the trial court. A case might arise where a defendant charged with crime might sedulously seek a vindication and want an immediate trial and the court could of course, in conformity with the statute, give him a trial in five days from the plea if convinced that the prosecution could be ready in that time. Similarly, where the Government, in the interests of public justice, insists on a speedy trial the only question is whether the defendant can get ready in the time named, in this case seven days. To say that generally more time should be granted on account of the general practice is, it seems to me, to insist on a technicality, namely, that usually more time is granted. There is no reason to grant more time if the defendant can get ready in seven days. There is no rule of law that more than seven days should be granted. The statute says "five days," and in California the time is now two days. So that any time outside of that period is purely within the discretion of the court. An improper use of that discretion must then happen. I say "happen" advisedly. While the rule is that an abuse of discretion must appear, I may say that, given the nature of the crime and of the

proof as actually submitted, I see nothing in the nature of the case or in such evidence that could not have been investigated within seven days and I am convinced that such investigation could have taken place without consuming the whole time of counsel. So that to insist on more time here is not only to insist upon a technicality as I have defined it, but to deduce from the usual practice a technicality not fixed by law.

In the Clemente case there was also an objection and exception to the presentation of a witness at the trial who was not included in the grand jury list. Here again the court might have saved all question by giving the defendants, if necessary, a few hours to meet the testimony of this witness, but this matter also falls within the rule attempted to be shown in this opinion, namely, that abuse of discretion must be shown, and it was not shown in this case.

Not having been convinced of error, I feel bound to dissent.