[Civ. No. 2317. First Appellate District.—April 29, 1918.]

## MERCHANTS COLLECTION AGENCY, (a Corporation), Respondent, v. JAMES D. ROANTREE et al., Appellants.

PROMISSORY NOTE — THREAT OF CRIMINAL PROSECUTION — PUBLIC POLICY—VOID INSTRUMENT.—A promissory note obtained by threats of criminal prosecution for embezzlement is against public policy and void.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

Leon Samuels, Jos. L. Taaffe, and Chas. J. McDonnell, for Appellants.

E. H. Wakeman, for Respondent.

BEASLY, J., *pro tem.*—This action was brought to recover the balance due on a promissory note in the sum of $3,950, executed by the defendants in favor of Gilmartin Company (a corporation), plaintiff's assignor, upon which the amount of $1,125 had been paid. The defense offered by both defendants was lack of consideration for the note and duress in obtaining it. The trial court found against these defenses, and awarded plaintiff judgment as prayed. This appeal is from the judgment and an order denying defendants' motion for a new trial.

James Roantree was employed before the San Francisco fire of April 18, 1906, as bookkeeper for the Gilmartin Company, a printing concern, and received for his services $125 a month. The printing establishment was totally destroyed in that fire, and in the month of July thereafter the company undertook to re-establish its business. Roantree was re-employed, and acted in the various capacities of bookkeeper, salesman, solicitor, assistant manager, and at times sole manager, and as such devoted more time and was burdened with more arduous and responsible duties than formerly. No salary was formally fixed for him by the officers of the company, but he drew from time to time during each month as he needed

it sums which at the end of four and one-half years aggregated an amount which would represent payments to him of $290 a month. These sums so received by Roantree were drawn openly and were all duly entered upon the books of the concern, either by himself or an assistant bookkeeper. In December, 1910, Roantree, having accepted a position with another printing establishment, gave notice of his intended resignation from the Gilmartin Company, and asked the president, James Gilmartin, for an adjustment of certain money invested by him in the company. Gilmartin then charged Roantree with having drawn from the funds of the company some five thousand dollars more than he was entitled to, and demanded restitution thereof. Roantree denied that he owed anything, claiming that all moneys drawn by him were in payment of salary. The matter was placed in the hands of the company's attorney, and a demand made upon Roantree for the sum of four thousand one hundred dollars, this amount being arrived at as a balance claimed to be due from Roantree for money drawn as above stated after crediting him with $150 a month as salary for the first six months after his re-employment, and two hundred dollars a month for the remainder of the period down to December, 1910.

The evidence showed that the attorney for Gilmartin Company threatened that the company would have Roantree arrested for embezzlement if he did not pay the sum which they claimed Roantree had overdrawn his salary. In their answer the defendants alleged that Roantree was not indebted to the Gilmartin Company in any sum of money whatsoever; and that the execution of the note was obtaind by duress, in that the Gilmartin Company threatened to institute criminal proceedings against Roantree unless himself and his wife executed the note, and that by reason of these threats and to avoid the threatened criminal proceedings they did execute it. The court found against defendants on these issues of their answer. The only real question here is whether the finding of the court that the note was not executed because of these threats is sustained by the evidence.

Mrs. Roantree testified that she signed the note only because of the threats. Roantree's testimony as to the reason for his signing the note was the same. That the attorney for the Gilmartin Company had threatened Roantree with criminal proceedings unless he signed the note is admitted by him.

The facts of this case bring it fairly within the rule declared in the case of *Morrill* v. *Nightingale*, 93 Cal. 452, [27 Am. St. Rep. 207, 28 Pac. 1068], where it is said: "The consent of a party to a contract must be free, and it is not free when obtained through duress or menace. Section 1569 of the Civil Code declares duress to consist in the 'unlawful confinement of the person of the party' or 'of the husband or wife of such party,' etc., or 'the confinement of such person, lawful in form, but fraudulently obtained.' Section 1570 provides, menace consists in a threat of the duress above specified, or of a threat of injury to the charater of such person. In this case there was no arrest and confinement, hence no duress; but the history of the transaction as disclosed by the findings clearly indicates threats of imprisonment upon a charge of embezzlement, which in effect necessarily were threats of injury to the character of defendant Nightingale, and consequently a menace." The doctrine of the case just quoted has been very recently reiterated and affirmed by the supreme court in the case of *People* v. *Beggs*, 178 Cal. 79, [172 Pac. 152], in support of the declaration that "the law does not contemplate the use of criminal purposes as a means of collecting a debt. To invoke such process for the purpose named is, as held by all authorities, contrary to public policy," and by way of emphasis the supreme court in the case of Beggs supposes a situation, based upon circumstances which are not materially different from the facts in the instant case, thus: "If instead of paying the two thousand dollars, Da Rosa (the complaining witness in the Beggs case), under the circumstances shown to exist, had given his note and a mortgage securing the same, then under the authority of the case cited (*Morrill* v. *Nightingale, supra*), payment thereof could not have been enforced, the reason therefor being that the execution of the security was procured by the wrongful use of fear, induced by the threat to prosecute him for the crime out of which the indebtedness arose." Upon the authority of that case it is clear that the execution of the note in suit was obtained from the defendant by means of menace and therefore no recovery should be had thereon.

Pursuant to the reason and authority of these cases it must be held that the finding of the court, above referred to, to the effect that this note was not obtained by the threats of crim-

inal prosecution was not sustained by the evidence, and as the finding was vital to the judgment, the case must be reversed, and it is so ordered.

Lennon, P. J., and Kerrigan, J., concurred.