[No. B054554. Second Dist., Div. One. Dec. 31, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
RAUL TORRES SERRANO, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III through VI.

## COUNSEL

Patricia L. Watkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George H. Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Stan M. Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ORTEGA, Acting P. J.**—We affirm the judgment convicting defendant Raul Serrano of numerous crimes, including kidnapping for ransom. In the published part of this opinion, we uphold the provision increasing the punishment for kidnapping when the victim is intentionally confined in a manner exposing her to a substantial likelihood of death, and reject defendant's claim that the trial court erred in rejecting defense evidence of a good faith claim of right to the ransom demanded.

### BACKGROUND

While on her way to work about 7:30 a.m., Zoraida Noriega was kidnapped at gunpoint by John Laponte, who forced her to drive to a motel. Laponte told Noriega defendant had sent him to kidnap her. The two were admitted to the room by a woman to whom Laponte gave Noriega's car keys. The woman left. Laponte tied Noriega up. Sometime later, when Noriega complained, Laponte untied her.

Defendant and Noriega are cousins. Noriega's mother and stepfather are defendant's godparents, who tired of defendant's habit of asking for money, a habit which caused a falling out.

About two hours after the abduction, defendant showed up in the motel room. He told Noriega he intended to ask her family for $50,000 ransom. He threatened to rape Noriega. At some point, Laponte gave his gun to the previously unarmed defendant.

Laponte had Noriega tape a message to her family saying she was fine and her parents were to do as they were told. The third confederate, Gabriel Ayala, arrived about 11:30 a.m., armed with a machine gun.

Laponte called Noriega's parents and negotiated the ransom, saying Noriega would be cut up and left in a sack if the parents did not pay. Having traced the call, the police went to the motel. Laponte was arrested outside the motel, without the knowledge of those inside. Laponte told the police which room the others occupied.

Later in the afternoon, defendant looked out the window and saw the police. Ayala wanted to shoot it out, but defendant vetoed the idea. The two used Noriega as a shield, made it to a car, and drove off, leading the police on a seventy mile-per-hour chase on surface streets during which the culprits ran three red lights. During the chase, they threw their guns out of the car. They were arrested when they turned into a dead-end street.

The defense consisted of the testimony of Laponte, who claimed he had kidnapped Noriega in retaliation for threats from her family to his. Defendant had complained to Laponte that his house had been burglarized and his daughter tied up. Defendant knew nothing of the kidnapping until he arrived at the motel room, at which time Laponte said to him, " 'here's the girl that done the crime in your house.' " Both Laponte and defendant told Noriega they wanted her to return defendant's "stuff." But defendant wanted no part of the kidnapping.

The jury convicted defendant of several crimes, including kidnapping for ransom and assault with a deadly weapon. The trial court sentenced defendant to life in prison without possibility of parole.

DISCUSSION

I

The jury found that defendant intentionally confined Noriega "in a manner which exposed her to a substantial lik[e]lihood of death." With such a finding, Penal Code section 209 provides for punishment by life in prison without possibility of parole. Defendant complains that the provision, which has not been defined by the Legislature or by a jury instruction, is unconstitutionally vague.

" '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application[,] violates the first essential of due process of law.' (*Connally* v. *General Const. Co.* [(1926)] 269 U.S. 385, 391 [46 S.Ct. 126, 70 L.Ed. 322] . . . .) A statute must be definite enough to provide a standard of conduct for those whose activities are proscribed as well as a standard for the ascertainment of guilt by the courts called upon to apply it. [Citations.]" (*People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 [317 P.2d 974].)

"[S]tatutes are not automatically invalidated as impermissibly vague simply because difficulty is found in determining whether certain marginal

offenses fall within their language. [Citation.]" (*Findley* v. *Justice Court* (1976) 62 Cal.App.3d 566, 570 [133 Cal.Rptr. 241].) The courts are required to interpret and apply statutes according to the Legislature's intent. (*People* v. *Daniels* (1969) 71 Cal.2d 1119, 1127-1128 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].)

■ We find nothing vague about the provision, nor need we sprinkle this opinion with dictionary definitions of "substantial" and "likelihood." The words used are of common usage. The overall meaning conveyed is easy enough to grasp. That marginal situations may or may not fall within the meaning of the statute is not a basis to overturn it. The Legislature, which saw no need to define the words in the provision, plainly meant to enhance punishment for a kidnapper who intentionally increases, by a certain degree, the risk of death otherwise inherent in kidnapping. (See *People* v. *Ordonez* (1991) 226 Cal.App.3d 1207, 1228 [277 Cal.Rptr. 382]—kidnapping is an inherently dangerous felony.) We are confident that any reasonably intelligent jury can fathom the meaning and apply it to the unique facts of its case and determine whether the circumstances present a substantial likelihood or, for example, a mere possibility.

We reject defendant's attempt to link the disputed phrase to the concept of "bodily harm" contained in Penal Code section 209 which has been the subject of appellate definition and jury instructions. In essence, defendant argues that if "bodily harm" is vague enough to have inspired such litigation, so too is "substantial likelihood of death." (We assume defendant is not arguing that the "death" portion of the phrase is vague.)

While a particular physical mishap may seem trivial to some (a professional football player, for example) a similar injury may cause nightmares to another. Without some definition of "bodily harm" to guide a jury, there is no standard against which to measure. But attempting to create a definition for the phrase "substantial likelihood" can only lead to the confusion of an otherwise straightforward concept.

As both sides point out, the amendment to the Penal Code adding the disputed phrase was in response to the decision in the infamous Chowchilla kidnapping case which held that the child hostages had not suffered bodily harm. (*People* v. *Schoenfeld* (1980) 111 Cal.App.3d 671 [168 Cal.Rptr. 762].) Penal Code section 209 previously provided for life without possibility of parole only if the victim suffered death or bodily harm. The Legislature responded to the Chowchilla case by extending the enhanced penalty to situations where the victim was not injured, but put at increased risk. We find nothing indicating that the Legislature intended the amendment to be

read in any but its plain ordinary meaning. As read, the amendment does not allow the enhanced penalty for all abductions, but only under specified circumstances.

That portion of Penal Code section 209 providing for a sentence of life in prison without possibility of parole if the victim "is intentionally confined in a manner which exposes such person to a substantial likelihood of death" is not unconstitutionally vague.

## II

■ Equating the ransom element of kidnapping with theft, defendant argues he should have been permitted to present evidence of a good faith claim of right to the $50,000 ransom. The evidence would have been of Noriega's alleged participation in a burglary at defendant's home, where his daughter was tied up, with the theft of $50,000 worth of money and jewelry. If he believed he had a right to reimbursement for the property lost in the burglary, defendant argues, the ransom element would fall and the kidnapping would be reduced to a lesser degree of seriousness.

While a good faith belief in right to the property taken negates the specific intent required for theft (*People* v. *Romo* (1990) 220 Cal.App.3d 514, 517 [269 Cal.Rptr. 440]) the same is not true of a ransom demand. Holding one for ransom is an attempt at a form of extortion, which is "the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right." (Pen. Code, § 518.) (Ransom—"the money, price, or consideration paid or demanded for the redemption of a captured person." [Webster's New Internat. Dict. (3d ed. 1976) pp. 1881-1882.])

"Extortion and theft are not the same offense." (*People* v. *Goodman* (1958) 159 Cal.App.2d 54, 61 [323 P.2d 536], see also *In re Stanley E.* (1978) 81 Cal.App.3d 415, 420 [146 Cal.Rptr. 232].) "[G]ood faith, or the fact that the end accomplished by such means is rightful, cannot avail one as a defense in [an extortion] prosecution, any more than such facts would constitute a defense where one compels payment of a just debt by the threat to do an unlawful injury to the person of his debtor. . . ." (*People* v. *Beggs* (1918) 178 Cal. 79, 84 [172 P. 152]; see also *Lindenbaum* v. *State Bar* (1945) 26 Cal.2d 565, 573 [160 P.2d 9]—In the crime of attempted extortion, it "is immaterial that the money which petitioner sought to obtain through threats may have been justly due him[,]" and *People* v. *Whipple* (1929) 100 Cal.App. 261, at p. 263 [279 P. 1008], citing *Beggs* for the proposition that "one who obtained payment from a thief of the value of property stolen by

him, by threatening him with an accusation and prosecution thereon unless he made such payment, was guilty of the crime of extortion, without regard to the exercise of good faith in exacting the amount justly due.") " '[T]he law does not contemplate the use of criminal purposes as a means of collecting a debt. To invoke such process for the purpose named is, as held by all authorities, contrary to public policy[.]' " (*Merchants Col. Agency* v. *Roantree* (1918) 37 Cal.App. 88, 90 [173 P. 600].)

In short, there is no such good faith exception to extortion or kidnapping for ransom. Even if a debt is owing, it cannot be collected by the reprehensible and dangerous means of abducting and holding a person to be ransomed by payment of the debt. The trial court properly excluded the evidence offered for the purpose of proving an invalid defense.

### III-VI*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### DISPOSITION

The judgment is affirmed.

Vogel, J., and Aranda, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied April 1, 1993.

---

*See footnote, *ante,* page 1672.

†Judge of the Municipal Court for the South Bay Judicial District sitting under assignment by the Chairperson of the Judicial Council.